(14 App. Div. 380.)

### JAMESON et al. v. HARTFORD FIRE INS. CO. et al.

(Supreme Court, Appellate Division, First Department. February 19, 1897.)

1. INSURANCE COMPANY—REINSURANCE—VOLUNTARY DISSOLUTION—INJUNCTION.

A solvent fire insurance company had been doing business at a loss for 10 years. The dividends during that time had been paid from the surplus, the earnings for each year having been less than the current expenses. Its charter expressly authorized it to make reinsurance on all of the risks taken. Its directors concluded that the interests of the stockholders would be best served by voluntary dissolution. They contracted for reinsurance of all risks with another company, and transferred to it the lease of their offices with fixtures, agency records, and supplies. They then sued for dissolution. The terms on which reinsurance was made were more advantageous than could have been obtained after the action was begun. Certain of the stockholders got a temporary order restraining the companies from acting under the contract, and on the hearing of their application the injunction was continued pending the action for dissolution. *Held*, that the injunction was improperly continued, since it was mandatory, and, in effect, annulled an executed contract. Patterson, J., dissenting.

2. SAME—CONTRACT BY DIRECTORS—VALIDITY.

The contract for reinsurance was in the sound judgment of the directors, since it did not incapacitate the company from continuing business.

3. SAME—TRANSFER OF PERSONAL PROPERTY.

The contract for reinsurance being valid, it carried with it the power to transfer the personal property, without which the reinsurance was impracticable.

Appeal from special term, New York county.

Action by Edwin C. Jameson and others against the Hartford Fire Insurance Company, the Broadway Insurance Company, and others, to restrain defendants from acting under a contract for reinsurance, pending an action by the Broadway Company for dissolution. From an order continuing an injunction during the pendency of the action, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Benno Loewy and Austen G. Fox, for appellants.

Paul Fuller, for respondents.

WILLIAMS, J. The action was brought to restrain the defendants from carrying out a contract entered into between them relating to the reinsurance by the Hartford Company of the risks of the Broadway Company, and for other relief, upon the ground that such contract was illegal, ultra vires, and void, and that carrying it out would cause irreparable injury to the plaintiffs and others. The plaintiffs were stockholders of the Broadway Company, and the defendants were the two companies parties to the contract and the directors of the Broadway Company. The contract was made November 11, 1896. The action was commenced November 12, 1896. Upon that day the plaintiffs served the papers upon which an application was subsequently made for an injunction pending the action. An order was made enjoining and restraining the defendants until the hearing and determination of the application. The application was subsequently heard, and on December 30, 1896, the order was made from which this appeal is taken.

The complaint in this action alleged, among other things, that the Broadway Company was a domestic corporation, and the Hartford Company was a foreign, Connecticut, corporation; that November 11, 1896, the board of directors of the Broadway Company held a meeting in the city of New York, at which they agreed and determined to wind up the affairs of the corporation, and to suspend the business for which it was incorporated, and to execute the contract in question; that on the same day the president made the contract with the Hartford Company, and mailed to the company's agents a notice of such determination, and of the making of the contract, etc.; that the contract was made, and the notice mailed, with the knowledge, consent, and authority of the board of directors, and in pursuance of resolutions adopted at the meeting; that the object of the resolution, contract, and notice was to wind up and terminate the company; that the company was at all the times referred to in the complaint a solvent corporation, and had for years paid a large dividend; that the acts of the board of directors in passing the resolutions and carrying them out were beyond the powers of the board, and the company itself, and therefore void, and the contract with the Hartford Company was ultra vires, and void; that the plaintiffs had never consented to or ratified the resolutions, contract, or notice to agents; that, if the resolutions were carried into effect, or the contract executed, the result would be that the Broadway Company would suspend a lawful and paying business, would discontinue the objects for which it was incorporated, and the corporation and the plaintiffs would suffer irreparable injury; that the Broadway Company, pursuant to the contract, had assigned and transferred to the Hartford Company securities described in the contract, the lease of its offices in New York City, all of its insurance maps and furniture, and safes, agency records and supplies, and that the board of directors had determined to and would fully complete the contract, unless restrained by order of the court; and relief was sought restraining such acts by the company and directors, and restraining the Hartford Company from acting under the contract. It will thus be seen that the plaintiffs based their right of action and their prayer for relief by way of injunction against the defendants upon the claim that the acts sought to be restrained were beyond their power, illegal, ultra vires, and void, and would cause irreparable injury to the plaintiffs and the company. It appears from an examination of the papers used upon the application for an injunction that, after a consultation between the directors of the Broadway Company with reference to the propriety and necessity of dissolving the company, they held the meeting of November 11, 1896, and passed resolutions to the effect that it was beneficial to the interest of the stockholders that the company should be dissolved, and its outstanding risks should forthwith be reinsured; that the officers of the company forthwith enter into the contract with the Hartford Company for such reinsurance, and that proceedings for the voluntary dissolution of the company according to law be at once commenced, and that the company should take no new business; that the contract

was thereupon at once executed, and the carrying out of the same was commenced; that a petition for the voluntary dissolution of the corporation was at once prepared and executed by the directors, and on the morning of November 12, 1896, and prior to the commencement of this action, and the making of the order temporarily restraining the defendants, was presented to the court, and an order made thereon directing all persons interested to show cause before Franklin Bien, referee, at his office in New York City, February 13, 1897 (that being the earliest day on which an order to show cause could be made returnable), why the corporation should not be dissolved.

It cannot be doubted that the directors had the legal power to commence these proceedings for a voluntary dissolution of the corporation, and that it was their duty to do so, if for any reason, they deemed it beneficial to the interests of the stockholders that the corporation should be dissolved. It was not necessary that the corporation should be insolvent, in order to justify the proceedings for dissolution, and the final dissolution of the corporation. The papers disclose such a condition of this corporation as made the proceedings for such dissolution entirely proper. The company was not insolvent, but it had concededly been losing money every year for the last 10 years, and the dividends had during that whole time been paid, not from the net earnings of the company, the earnings having each year been less than the current expenses, but from the surplus on hand, which had thereby been steadily reduced from year to year. This appears not only from the defendants' showing, but from the letter sent out by the plaintiffs' agent in June, 1896, wherein the losses during 10 years were clearly set forth, showing the loss in surplus for the last 10 years was $300,000 and in assets $133,000, and expenditures in excess of income $250,000; and loss for the last five years in surplus was $107,000, in assets $30,000, and expenditures in excess of income $67,000; and the loss for the last year in surplus was $17,000, in assets $7,000, and expenditures in excess of income $1,500. This letter further stated that the company claimed to have a surplus at the beginning of the last year of $43,000, but that the actual surplus was at least $10,000 less than that sum. The plaintiffs were then trying to buy up the stock of the company, very likely for the purpose of getting a controlling interest in the company, so as to control the election of directors at the coming election. Other items of evidence in the papers might be referred to, showing beyond question that the company, though still solvent, and able to pay its debts and liabilities, was nevertheless doing business at a loss, and paying dividends out of its surplus, and had been doing so for at least 10 years last past. The directors may well have believed it to be for the interest of the small stockholders, at least, that the dissolution of the company should be secured, while they still had the power to act in the premises, and before the plaintiffs succeeded in buying up the majority of the stock, and thus obtaining control of the company, when the smaller stockholders would be at their mercy. We are unable to say, from an examination of the papers, that the directors were not justified in their conclusion that it was beneficial to the in-

terests of the stockholders, that the corporation should be dissolved. Indeed, there seemed to be no other conclusion possible. This being so, they were not only acting within their legal right, but in accordance with their duty, in determining to commence the proceedings for dissolution of the corporation, and in acting promptly in instituting the proceedings. It will be noticed that the plaintiffs did not, in their complaint, attack either the legality or propriety of this action by the board of directors, although it was a part of the scheme outlined in the resolutions, and was the basis for the action of the directors in reinsuring the risks of the company, and the reason alleged for the propriety and necessity of making the contract of reinsurance.

It cannot be said as an abstract proposition that the board of directors had no legal power to reinsure the risks of the company, because the amended charter of the company, by section 2; provided expressly that "this company shall have power to make reinsurance upon any or all of the risks to be taken by them as aforesaid." If it be claimed that this section did not give the directors the power to close up the business of the company, the reply is that this contract of reinsurance did not, in and of itself, close, or assume to close, the business of the company. It in no way deprived the company of the power to go on and take new business. The contract was evidently made with a view to the dissolution of the corporation, but the dissolution was to be effected, if at all, in the proceedings begun at the time; and, if the court refuses to order such dissolution, the corporation will have to go on with its business, which it can do, notwithstanding the contract of reinsurance has been made and fully carried out. There can be no doubt as to the legal power of the directors to make this contract of reinsurance. The only question is whether it was a proper thing to do under the circumstances. The defendants claim that, if the proceedings for dissolution were to be commenced, and especially if they were to result in the dissolution of the corporation, it was absolutely necessary, in order to protect the company against serious loss in the existing business, that the reinsurance should be effected prior to or at the time of the commencement of the proceedings for dissolution, and this claim is supported by the affidavits of several insurance men of large experience. It also appears from the papers that this course has usually been resorted to, and this is uncontradicted. It was the duty of the directors to act as their judgment dictated, for the best interests of all the stockholders, and it was evidently for their interest that the reinsurance should be effected as early as it was. It appears the contract was a favorable one for the Broadway Company, and the transfer of the personal property referred to in the contract was a necessary incident to the reinsurance of the risks, and, if the reinsurance was properly and discreetly effected, no reasonable objection can be made to the transfer of the personal property referred to. There seems to be no allegation in the complaint of bad faith or fraud on the part of the defendants, in making the reinsurance, except the charge that it was ultra vires. There is nothing in the papers to show bad faith on the part of the defendants, and we do not think there was any warrant for saying the contract was ultra vires.

The views we have expressed lead us to conclude that this injunction order was improperly granted upon the papers before the court, and that the order should be reversed, with $10 costs and disbursements of this appeal, and the application should be denied, with $10 costs.

VAN BRUNT, P. J., and BARRETT, J., concur.

BARRETT, J. I concur in the reversal of this order for the following reasons, in addition to those given by Mr. Justice WILLIAMS:

1. The contract did not, as Mr. Justice PATTERSON assumes, effect the sale of all the property of the company, much less of its franchises. The only property covered by the agreement—apart from the reinsurance arrangement—is (a) the lease of the premises occupied by the company, together with its furniture and safes; (b) its insurance maps; (c) its New York City and agency records and supplies. This property was an essential incident to the contract of reinsurance; and, if that contract was within the power of the directors, so, certainly, was the sale of these necessary appendages to its due execution by the purchaser. The sale of this personal property as an independent act had no taint of invalidity. Still less was it ultra vires when appurtenant to a valid contract of reinsurance. Nor did this contract, as is also assumed, leave the seller company with nothing but its corporate name and its liabilities. On the contrary, it guarantied the company against its liability upon contracts of insurance to the amount of about thirty millions of dollars, and as between the two companies practically transferred that liability to the purchaser company. It also saved it from heavy expenses pending the dissolution proceedings, and secured for the stockholders some $50,000 more than would have been available for distribution had the company not been relieved from its liability upon such contracts. And, further, it not only left to the company all its capital and assets not specifically included in the contract, but also left it perfectly free, and with ample means, at any future time to resume business, should such resumption be deemed proper or expedient, or should unforeseen circumstances favor such resumption.

2. Upon the facts here presented, the contract was a valid exercise of power upon the part of the directors. This being a private corporation, exercising no public or quasi public function; its business having been conducted for years at a steady loss, and there being no reasonable prospect of future success, or of profit to the shareholders,—it was the duty of the directors to stop the outgo, and to wind up its affairs. As Mr. Morawetz well says in his work on Corporations (section 412):

"The ultimate object of every ordinary trading corporation is evidently the pecuniary gain of its shareholders. * * * It seems to follow, therefore, that after a corporation of this character has become hopelessly insolvent, or unable to carry on its business except at a loss, it is the duty of the managers of the company to stop carrying on its business any further, and to wind up its affairs. To continue the business of the company under these circumstances would involve both an unauthorized exercise of corporate franchises, and a breach of the contract between the shareholders."

The exercise of a sound judgment upon this subject was within the province of these directors. "The right of a manufacturing corporation," said Follett, J., in Skinner v. Smith, 134 N. Y. 250, 31 N. E. 911, "to discontinue its operations when they have become unprofitable, for the purpose of protecting shareholders from further loss, does not admit of doubt;" citing Treadwell v. Manufacturing Co., 7 Gray, 393, and many other cases. The principle thus enunciated is not at all in conflict with that stated in Abbott v. Rubber Co., 33 Barb. 578. There the action of the directors entirely incapacitated the company from ever transacting the business for which it was incorporated. The sale covered the very patent rights under which alone the company could do business; and that sale was made by the directors to some of their own number, who formed a new organization to conduct the business of manufacturing under these patents. Upon this latter fact, the court held the action of the directors to be fraudulent. It is true that it also held their action to be ultra vires. But why? Because the company was apparently successful and prosperous, and because the action of the trustees was simply an attempt to inflict upon it, to quote the language of Justice Allen, "political death" for their own benefit, and in fraud of the rights of their cestuis que trustent, the stockholders. The company there was not, as here, operating at a steady loss. The wiping out of its surplus was not imminent. Insolvency was not impending, either presently or remotely. Here, upon the other hand, all these features exist, and there is no suggestion of fraud or bad faith upon the part of the directors. On the contrary, the contract which these directors have made is the ordinary and sensible accompaniment of dissolution proceedings, rendered appropriate, indeed essential, by the special facts disclosed; and which apparently must result in a final order of dissolution. That contract, too, is highly beneficial to the stockholders and to all concerned. It is, therefore, neither fraudulent nor ultra vires. The affidavits which were used in opposition to the motion are conclusive—First, as to the facts upon which the power of the directors, apart from that specially conferred by section 2 of the charter, was predicated; and, second, as to the fairness and propriety of the exercise of that power. In voluntary dissolution proceedings the court, up to the moment of actual insolvency, is powerless to appoint even a temporary receiver, and the final order cannot be obtained for upwards of three months. Code Civ. Proc. § 2423. Can it be that the saving authority of the directors during all this period is limited to stopping business and taking no fresh risks? That in the interim they cannot protect the company from the losses which it may suffer from existing risks? We are told that they may see ruin staring them in the face,—from sudden catastrophes, accumulating losses, and other causes,—but that they are powerless; that they must sit with folded arms until actual insolvency is reached, or a final order permits the court to step in. This dangerous view is not borne out by authority. On the contrary, the authorities are, as we have seen, directly the other way. And it certainly is not good sense. The mistake lies in the misapplication of the doctrine that the statutory method of effecting dissolution is exclusive. That doctrine re-

lates solely to the power of the courts. It has no relation to the general power of the directors, either independently or as an incident to these proceedings. Here the resolution with regard to dissolution proceedings very properly accompanied the action of the directors. That resolution, like the contract, was fully justified by the company's steady decline and probable insolvency. The directors judiciously time its passage at the moment when they were able to secure a guaranty against loss pending the proceedings to be instituted thereunder. Thus the resolution and the contract afford mutual evidences of good faith and sound judgment. And the contract justly and providently anticipated both the normal delay in the conduct of the proceedings and their almost certain outcome.

3. A mandatory injunction summarily evicting the purchaser, and commanding it, upon the very commencement of the action, to restore to the seller the subject of the sale, and to relinquish pendente lite all the rights which it had secured under its contract, should certainly not have been granted. That was an extraordinary, and, under the circumstances disclosed by the record, unwarranted, exercise of judicial power. It amounted to the practical annulment of an executed contract without a trial. It was a summary determination, in advance of the regular hearing, of all the important questions involved,—questions which, even upon the case presented by the complaint, were by no means free from doubt. This order thus had substantially the effect of final judgment granted upon a preliminary motion against an undoubtedly solvent defendant, who was actually in possession under a contract executed in perfect good faith, and after due consideration. While the court possesses jurisdiction to grant a mandatory injunction on an interlocutory application, yet it is always reluctant to do so, and only exercises that power in an extreme case, where the right is clearly established, and the invasion of the right results in serious injury. 1 High, Inj. (3d Ed.) § 2. Such injunctions are seldom allowed before a final hearing. It was even said in Ward v. Kelsey, 14 Abb. Prac. 109, that a temporary injunction should only be issued to prevent an act, not to compel the performance of one. Here certainly the seller company could not be compelled, by a species of interlocutory mandamus, to continue its business, and to accept risks pending the dissolution proceedings, despite the resolution of its directors to the contrary. The mandatory part of the injunction here was, therefore, entirely valueless to the seller company, and was simply oppressive to the purchaser company. It could serve no useful purpose, and it tended to produce irreparable injury to the company in whose interest it purports to have been granted.

In every aspect of the case the order appealed from should be reversed.

VAN BRUNT, P. J., and WILLIAMS, J., concur.

RUMSEY, J. I concur with the majority of the court that the order appealed from should be reversed; but I put my concurrence

solely upon the ground that substantially all the acts enjoined were practically completed before the granting of the injunction, and the injunction amounts simply to an eviction of the Hartford Fire Insurance Company from the premises it occupies, and to a command to them to restore that which they had already received and are holding under the contract. It is purely a mandatory injunction in all its essentials. Such an injunction should rarely, if ever, be granted pendente lite; and the granting of such an injunction in this case was not, as it seems to me, a proper exercise of the discretion of the court. This ground is sufficient to require the reversal of the order. The other questions are so important in their nature that in my judgment they ought not to be decided upon a motion which appeals purely to the discretion of the court, since the decision upon such a motion cannot be reviewed.

PATTERSON, J. (dissenting). I am not able to concur in the views expressed in the opinion of the majority of the court on the matters involved in this appeal. I think the injunction was properly granted, and should be maintained, for the reason that the acts of the directors of the Broadway Insurance Company complained of by the plaintiffs and performed in execution of the terms of the contract between that company and the Hartford Insurance Company, were altogether beyond the powers of those directors, and were destructive of the business of the Broadway Company, which they were bound to preserve for the benefit of the stockholders until a judicial sentence of dissolution is pronounced against that corporation, if that is ever done. No one will assert that it is competent to the directors of a solvent and going corporation to transfer all its business assets and good will to another corporation, and leave their own company nothing but its corporate name and its liabilities; and that is, in effect, what the directors of the Broadway Insurance Company have done. The contract made by them with the Hartford Fire Insurance Company virtually terminates everything but the nominal existence of the Broadway Company. It is called a contract of reinsurance. It is not only such a contract, but it is one by which everything of real value belonging to the Broadway Company is turned over to a foreign insurance company or its agents within this state. The contract has not only been formally executed and delivered, but acts have been performed under it which, if allowed to stand, completely destroy the corporation. Justification for this is sought in the statement that the directors of the Broadway Insurance Company passed a resolution favoring the voluntary dissolution of that corporation under the statute, and that the contract made with the Hartford Insurance Company is in furtherance of that resolution, is appropriate, is authorized, and is necessary in view of it. It is further claimed that the authority to reinsure is derived from the second section of the charter of the Broadway Insurance Company, which charter was granted in the year 1842. Wherever this subject is touched, and at whatever point it is taken up, it seems to me to be beyond the possibility of contradiction that everything done by the directors

of the Broadway Insurance Company under the contract with the
Hartford Fire Insurance Company is entirely beyond their powers
in view of the claim they make as to the purpose of the contract.
No authority whatever was given to these directors to strip the cor-
poration of all its possessions by the provision of section 2 of its
charter.   The so-called "reinsurance" of all its risks was, by the
confession of the defendant directors themselves, made in anticipa-
tion and for the purpose of discontinuing the business of the corpo-
ration to the end that it might be judicially dissolved.   The pro-
vision as to reinsurance contained in the second section of the char-
ter considered independently is to enable the corporation to do busi-
ness, not to cease doing it.   It only relates to the ordinary con-
tract of reinsurance between one underwriter and another, by which
the original underwriter is enabled to transfer its liability to, or
divide it with, that other.   It is a mere contract between two un-
derwriters, with which the policy holder is in no way in privity, and
which he cannot enforce except under an assignment.   It was
obviously inserted in this charter in order that the faculty to do
that particular thing might be conferred upon the Broadway In-
surance Company.   It is a grotesque perversion of the charter to
invoke the aid of that section to destroy the business of a corpora-
tion, and the contract between the insurance companies in this case
turns everything of real value over to the Hartford Insurance Com-
pany.   It gives them the possession of the offices of the Broadway
Insurance Company, its papers, and its property.   It wrecks the
business of that company, and the whole purpose of the scheme is to
dissolve the corporation as of the date of November 11, 1896, for
on that day the secretary of the corporation notified all its agents
that the Broadway Insurance Company had determined to discon-
tinue business, and that all records and all supplies in the agents'
hands had been sold to, and were now the property of, the New York
Underwriters' Agency, which appears to be under the control of A.
& J. H. Stoddard, the agents of the Hartford Fire Insurance Com-
pany; and by the contract the Broadway Fire Insurance Company
reorganized A. & J. H. Stoddard as the general agents of the Hart-
ford Fire Insurance Company.

The only ground upon which the directors of the Broadway Insur-
ance Company can claim (and they do claim it) to justify their action
is that they determined that it was for the best interests of the stock-
holders of that company that it should be dissolved, and that they
passed a resolution to that effect, and that in pursuance of that reso-
lution they took proceedings under the statute for a voluntary disso-
lution of the corporation, and that their action in making the con-
tract with the Hartford Insurance Company, and all that they have
done under and pursuant to that contract, is in the best interests of
the stockholders.   But all that is unavailing to sanction what the di-
rectors of the Broadway Insurance Company have done.   It is stated
in the majority opinion of the court that it is not charged that the
action of these directors is fraudulent.   It is not so charged in the
complaint, and therefore I do not intend to impute any fraud to any
of the directors who have united in the resolution, or who have au-

thorized the contract, or the acts done under it; but the consideration of fraud has nothing to do with the question of power, which is the one involved in this matter. That question of power must be considered as relating to the dissolution of the company. The institution and pendency of proceedings for the voluntary dissolution of the corporation gave no right whatever to the directors to do any of the things they have done in their transaction with the Hartford Insurance Company. The voluntary proceedings referred to are taken under the statute, and those proceedings must be strictly pursued. In re Boynton Saw & File Co., 34 Hun, 371; Chamberlain v. Paper Vessel Co., 7 Hun, 557; In re French Manuf'g Co., 12 Hun, 488. All the right given under that statute to the majority of the directors is to present a petition to the court, to procure an order to show cause, and make service of that order upon the parties who are entitled to notice under the statute, and then stop until the court acts. Not one step can be taken further than that until the whole matter is brought before the court, and the parties interested as creditors or stockholders are heard, if they want to be heard, upon the subject of the petition. So carefully are the rights of stockholders and creditors protected that it is provided in the statute that not less than three months shall elapse from the time the order to show cause is granted before the court can act; and the court itself is powerless to do anything with reference to the corporation or its business, or to interfere with it in any way, even by the appointment of a receiver to protect assets, except in the case of an insolvent corporation. But in this case the directors of this solvent and going corporation have not only taken the steps authorized by the statute, but they have decided the matter for themselves without a hearing of the stockholders. This corporation may never be judicially dissolved, but these directors have virtually pronounced a decree for the court. They have declared to their agents that the corporation is dissolved. They have disposed of its assets and business. They have put themselves in the place of the court, and done that which the court was itself powerless to do, namely, determined the matter before the order to show cause was returnable; and they have assumed all the functions of the court in advance in disposing of their own application. If such acts on the part of directors of corporations are to be tolerated, it is very easy to see where it would lead. If on the return day of this order to show cause the stockholders of the Broadway Insurance Company shall show good reason why the corporation should not be dissolved, there would be absolutely nothing left of the business for the shareholders of the company unless the restraint is continued.

There are affidavits presented on the part of the defendant, made by gentlemen in the business of fire insurance, who assert that, notwithstanding the agreement with the Hartford Insurance Company and the acts of the directors of the Broadway Company under it, the Broadway Insurance Company, in case the petition of the directors is not granted by the court, could repossess themselves of the business, and go on with it. But this seems to be utterly incredible in view of what has been done by these directors, and of which the affiants must have been ignorant, namely, the notices which were sent

out to their agents, terminating and destroying the business of all the agencies of the company wherever they existed, leaving the Hartford Insurance Company, or A. & J. H. Stoddard, its agents, in the absolute control and possession of really all that there was of the active business and the good will of the corporation. The purpose of this injunction was to stop the acts of the directors just where they were, and until the question of the dissolution of the corporation can be determined by the only court that has jurisdiction to determine it, namely, that branch of this court in which the order to show cause is made returnable. I think we have no right in this appeal to go into the merits of that application. That would be sitting in appeal upon such merits before the court of first instance has jurisdiction to hear the parties. The right of the directors of the Broadway Company was limited merely to getting that application properly and regularly before the court. In the meantime the business of the Broadway Company should stand as it had stood, namely, within the control of its directors as an active and going concern. As the whole purpose was merely to invoke judicial action, those directors had no power to do anything further, and no injury can result because the control of the business is in their hands, and there are no outside influences that can interfere with their discreet and proper management of that business in their own way. It is entirely clear to me that these directors have undertaken to do that which can only be done by the judgment of the supreme court, and through its receiver, when dissolution is adjudged; and that the injunction was a wise and just exercise of the discretion of the court from whose order this appeal is taken. This is not the case of the directors of a manufacturing or trading corporation suspending active business to prevent further loss to stockholders. All that was here done was directly connected with a proceeding devolving upon the court the duty of deciding the fate of the corporation. The statute controls. No other method than that prescribed by the statute to effect dissolution and end the business could be pursued. "The method of effecting corporate dissolution when prescribed by statute, as in this state, is exclusive." Hitch v. Hawley, 132 N. Y. 217, 30 N. E. 401, citing Verplanck v. Insurance Co., 1 Edw. Ch. 84; Kohl v. Lillienthal, 81 Cal. 378, 20 Pac. 401, and 22 Pac. 689; Spell. Priv. Corp. § 1008. See, also, People v. Ballard, 134 N. Y., at page 294, 32 N. E. 54. I think the original injunction, as modified by the order of Mr. Justice Lawrence, should be maintained, but there should also be a provision made in it that nothing therein contained shall operate to prevent the directors of the Broadway Insurance Company from bringing on their application for the voluntary dissolution, to be heard in accordance with the terms of the order to show cause.

With this modification, I think the order appealed from should be affirmed, with costs.