(35 Misc. Rep. 10.)

## L. D. GARRETT CO. v. MORTON.

(Supreme Court, Special Term, New York County. May, 1901.)

1. INSOLVENT INSURANCE COMPANY—SALE OF STOCK—VOID CONTRACT.

Where an insolvent fire insurance company, by its directors, resolves to reinsure its risks, or sell a majority of its stock, and accepts a proposition from another company to buy such stock and liquidate its affairs, the contract is void, under the insurance law (Laws 1892, c. 690) § 41, authorizing the attorney general to institute proceedings for a dissolution of an insolvent company unless the impairment is made up within a reasonable time.

2. SAME—LIABILITY OF STOCKHOLDER—FRAUD.

Where an insolvent insurance company sold out its capital stock to another company, in violation of the insurance law authorizing the attorney general to wind up an insolvent insurance corporation, a stockholder who accepts the offer of the purchasing corporation to buy his stock, and has been paid the price thereof, is not liable to the purchasing corporation on an allegation that the vendor's statement to its stockholders of its financial condition was false, the purchase being contrary to law.

Action by the L. D. Garrett Company against Levi P. Morton. Demurrer to complaint sustained.

Cardozo & Nathan (Edgar J. Nathan, of counsel), for plaintiff.
William Morton Grinnell, for defendant.

LEVENTRITT, J. This case differs from that of L. D. Garrett Co. v. McComb, N. Y. Law J., Nov. 30, 1900, only in the particular that there the complaint was dismissed at the end of the plaintiff's case, while here judgment for the defendant is sought on demurrer to a complaint identical with that in the earlier suit. L. D. Garrett Co. v. McComb was dismissed on two grounds: (1) The illegality of the agreement of which the purchase and sale of stock was a part, and (2) failure to prove agency on the part of those whom the plaintiff claimed represented the defendant. On appeal the judgment was affirmed on the latter ground (58 App. Div. 419, 68 N. Y. Supp. 996), the court holding that the proof on the trial was insufficient to connect the defendant. That question is not before me, as the complaint contains adequate allegations of agency. On the first ground the material allegations of the present pleading, together with their reasonable intendments, present substantially the situation disclosed at the end of the trial in the former case. I have not attempted to refine for the purpose of holding the complaint proof, at least, against the demurrer, as the plaintiff does not raise the point, and seeks a determination of the issues on the merits. After deliberate examination and a careful perusal and consideration of the able brief submitted by plaintiff's counsel, I find myself in accord with the views expressed by Mr. Justice Russell. The court there summed up its conclusion in this language:

"An insurance corporation which holds itself out to the public as an insurer, and upon the faith of whose solvency and continued ability and effort to carry out its contracts that public relies, can make no agreement looking to the death of that corporation for the personal benefit of the directors who are consummating such a result. If the corporation was in-

71 N.Y.S.—2

solvent, it was the duty of its managers to close its affairs in the manner provided by law, and not seek to continue its existence by transfer to another corporation, which was not even an insurance company, and thus relieve themselves of the duties imposed by law upon the trustees of the corporation. That the capital of the company was seriously impaired is beyond doubt, as also that it was in a condition requiring the superin-, tendent of insurance to prevent its obtaining new insurances until the deficiency was met by a further increase of actual capital. The purpose of the sale of a controlling interest in the stock to the plaintiff was to relieve the directors of an unpleasant and vexatious responsibility, obtain as much as possible for those holding stock, and give to the purchaser the power to elect a new board of directors, control the management of the company, and sell with profit to itself the business and good will of the company either to new stockholders or to another corporation. In the view of this court the transaction was one which cannot be sustained or enforced, and is fairly within the lines of the objection stated in the opinion of this court in the case of Wood v. Insurance Co., 30 Misc. Rep. 330, 63 N. Y. Supp. 427, the judgment in which was affirmed by the appellate division (67 N. Y. Supp. 1150) upon the opinion of the special term."

Though some of the court's statements are predicated on the facts proved by the plaintiff, an analysis of the complaint before me, which is to be taken as true, justifies every essential conclusion. It appears from the pleading that the board of directors of the Traders' Fire Insurance Company, of which the defendant was a stockholder, resolved to reinsure its fire risks, and to liquidate the affairs of the company, or to sell the stock held by the individual stockholders. Pursuant to such resolution, the board requested the plaintiff to submit to it a proposition for the liquidation of the company and for the purchase by the plaintiff of its stock. A statement was submitted to the plaintiff purporting to set forth the assets and liabilities of the Traders' Company. On its face this statement showed an impairment of the capital amounting to almost 40 per cent. Relying on the statement and the representation of the directors, the plaintiff made a proposition for the purchase of the capital stock, provided, not less than 65 per cent. should be transferred, agreeing to pay either $25 cash per share absolutely, or $40, less such proportionate sum as it should be obliged to pay on account of outstanding fire losses, not included in the statement submitted, and for some reason not even placed upon the books of the company, but which losses the plaintiff specifically agreed to pay in any event. In a circular letter addressed to the stockholders the directors notified them that all of the risks of the company had been reinsured, and that, taking measures for the "winding up of the company, * * * and after careful consideration of the condition of the company," negotiations had been had with the plaintiff, resulting in the offer already stated. The defendant accepted the plaintiff's offer of $25 per share, and received $2,000 for his 80 shares of stock. The plaintiff now claims that the statement was false and untrue; that, in place of there being only a 40 per cent. impairment of the capital stock, "the funds representing said capital stock were entirely exhausted, and the assets were wholly insufficient to meet the liabilities of said insurance company to its creditors"; and that the company, as of a date anterior to the institution of any negotiations with the plaintiff, was wholly insolvent; and that the stock which the plain-

tiff purchased was either wholly worthless, or of a value greatly less than $25 per share. The balance of the complaint shows that there are creditors of the Traders' Company, and sets out formal allegations necessary to recovery from the defendant.

The entire agreement between the plaintiff and the Traders' Insurance Company or its stockholders is not, in terms, averred. Emphasis is merely laid on the item of the purchase and sale of the stock, and of the assumption by the plaintiff of that portion of the outstanding fire losses not stated on the books of the company. But the entire pleading, with its permissible inference, leaves little doubt as to its general nature. Reduced to its lowest terms, the complaint resolves itself into a scheme to end, through the conscious instrumentality of the plaintiff, the political life of the Traders' Insurance Company at a time when it was insolvent in law, which the plaintiff knew, and insolvent in fact, which it claims it did not know, and as to which it asserts the false representations. The complaint discloses much more than an agreement for a mere purchase and sale of stock. The directors not only resolve to reinsure all the risks of the company in itself,—the clearest indication of an intention to abandon business,—but determine to "liquidate" its affairs. The plaintiff then alleges that it was requested to submit a proposition for the "liquidation of said Traders' Insurance Company, and for the purchase * * * of the stock." In its general sense, liquidation means "the act or operation of winding up the affairs of a firm or company by getting in the assets, settling with its debtors and creditors, and apportioning the amount of profit or loss." 3 Cent. Dict. 3474. There can be no doubt, under the unmistakable inference of the pleader's allegations, that it accepted the proposition to liquidate, and to purchase the stock. It alleges the details concerning the stock transactions, and omits allegations of the liquidation agreement, except to the extent already stated. It is clear, however, that the offer to liquidate was accepted, and that both the reinsurance—on its face, by the Traders' Company itself—and the stock deal were incidents of the general scheme. Were there any doubt about this, it would be set at rest by the circular letter to the stockholders, in which the plaintiff's alternative offer is submitted as one of the necessary measures for the "winding up" of the company.

So far as the directors of the Traders' Company were concerned, I am of the opinion that their action was illegal, not merely in the sense that the contract was unauthorized, or beyond the legal capacity of the corporation, but that it was void as against public policy. Gaslight Co. v. Claffy, 151 N. Y. 27, 35, 45 N. E. 390. It may be conceded at the outset that a purely private corporation has the right, when its business has become unprofitable, to discontinue operations for the purpose of protecting its shareholders (Skinner v. Smith, 134 N. Y. 240, 31 N. E. 911; Denike v. Cement Co., 80 N. Y. 606), and that, if resumption would be impossible or impracticable, it would even become their duty to institute legal proceedings for the dissolution of the corporation (Jameson v. Insurance Co., 14 App. Div. 380, 385, 44 N. Y. Supp. 15). But whether or not a strictly private corporation, without larger relations to the general public,

may, in the event of its reaching a nonpaying basis, accomplish practical destruction by its own act (People v. Ballard, 134 N. Y. 269, 294, 32 N. E. 54, 17 L. R. A. 737; Id., 136 N. Y. 640, 32 N. E. 611), I hold that this company could not, and that the statutory method provided where dissolution became imperative was and is exclusive. The complaint admits the Traders' Company to have been wholly insolvent. It is apparent on the face of the pleading that the capital stock was impaired 40 per cent. One of two alternatives was open to the directors: To make good the deficiency in accordance with the provisions of the insurance law, or terminate the affairs of the company. The policy of the law is, where the capital stock of an insurance company is impaired, even to the extent of 25 per cent., whatever the condition of the company may be in other particulars, to deem it insolvent, and have the attorney general institute proceedings for its dissolution, unless the impairment is made up within a limited period. Insurance Law (Laws 1892, c. 690) § 41. The law requires that under those circumstances no further insurance shall be accepted until the company is again on a basis deemed to furnish adequate protection to the general public dealing with it. The directors did not make good the deficiency, but decided to dissolve. Call it by any name,—winding up, liquidating, transferring stock or assets,—the end in view remains the same. The purpose was to terminate effectually the existence of the Traders' Company as an independent insurance corporation; to extinguish its life without applying to the court, and without subjecting its affairs and business methods to proper legal investigation and scrutiny, with the possible consequent rigorous liability of its managers. The life of this corporation, in the absence of some express statutory provision,—which is not to be assumed on the pleading before me,—could be ended only by law; its eyes could be closed only by the courts. While it might suspend its business activities, and become entirely dormant, so far as the exercise of any of its chartered functions is concerned,—conceding that the attorney general or the superintendent of insurance had not stepped in,—its life would continue until its charter period expired, or the court decreed a dissolution. Hitch v. Hawley, 132 N. Y. 212, 30 N. E. 401; Spring Co. v. Coursey, 45 App. Div. 268, 275, 68 N. Y. Supp. 98; People v. Ballard, supra; Brooklyn Steam-Transit Co. v. City of Brooklyn, 78 N. Y. 524, 529; Verplanck v. Insurance Co., 1 Edw. Ch. 84. The dictum in Mr. Justice Barrett's concurring opinion in the Jameson Case, supra, is not in conflict with these views. In that case dissolution proceedings had been instituted, and a contract of reinsurance of all the outstanding risks made, and a transfer of certain property as a necessary incident to it. The court refused to restrain the transfer, holding that, in view of the financial standing of the company, the directors were justified in seeking legal dissolution, and protecting the shareholders by the contracts in question. It is nowhere stated in the opinion that the dissolution could be consummated without a decree of the courts. The misapplication referred to of the doctrine that the statutory method of effecting dissolution is exclusive has bearing on the power of directors to do certain acts prior to or pending dissolution pro-

ceedings without authority of the courts. Had dissolution proceedings been instituted in this case, the plaintiff's contention that a director, while retaining his trust position, might negotiate a sale of the stock, would be unassailable. Here, however, the stock sale is merely an incident in the purpose to kill the corporation by giving the plaintiff at least 65 per cent. of the stock, and thus control of the corporation. It was merely a part of the plaintiff's offer to "liquidate" the company's affairs. What ultimate form the scheme of corporate annihilation was to take I may not speculate upon. It is sufficient, for the purpose of this decision, that the directors' acts had, in effect, however glossed over by polite language, this end in view, and that the plaintiff was a party to it.

Nor was the plaintiff an innocent party. It was apprised that the company's capital was impaired to an indefinite extent. A 40 per cent. impairment is conceded on the face of the statement on the basis of which the offer to liquidate was made. But the assumption of the outstanding fire losses not entered on the books shows a knowledge of further liabilities undetermined in extent. The plaintiff was charged with a knowledge of the law, and, if the company's purposed "liquidation" was illegal as against public policy, it cannot invoke the aid of a court of equity because it claims to have been overreached in the joint promotion of an unlawful scheme.

It is quite true that the Traders' Company was not a public, nor even a quasi public, corporation. It owed no duty to the public, like a railroad or a telegraph company, or similar concerns, nor did it exercise any peculiar and exceptional privileges, so that, in the event of its refusal to carry on its business, it might be compelled to fulfill its duty to the public by mandamus. Gaslight Co. v. Claffy, 151 N. Y. 24, 34, 45 N. E. 390. It is, nevertheless, erroneous to say that its official acts and contracts have no relation to the public, or may not affect that public prejudicially. The elaborate provisions on our statute books furnish the completest answer to such a proposition. In its relations to the public it stands on quite a different footing from an ordinary manufacturing corporation, which has relations ordinarily only with the limited portion of the public requiring its particular commodity. It is hardly too broad a proposition, however, to lay down that every property owner is an insurer against fire. So large a proportion of the community has dealings with insurance companies that the legislature has seen fit to enact laws governing this class of business as distinguished from others. The generality, magnitude, and diversity of interest involved have led to the imposition of rigorous conditions in exchange for the privileges granted under the charter. The stringent state supervision and the many safeguards embodied in the insurance law (conditions precedent to corporate origin and continuance) have the one aim in view,—the adequate protection of the insuring public. When an absolutely arbitrary test as to solvency is laid down as it is in section 41, the object in view can be but the single one, namely, that a company failing to meet it, independent of any question as to the actual relation between assets and liabilities, shall not be allowed to hold itself out to the public as a vital, going concern. The policy of

the law is that such a concern shall cease business if it fails to make good the deficiency. Had the directors of the Traders' Company done nothing more, their action would have been unexceptionable. According to the complaint, the directors decided to wind up, and not repair the impairment. The duty was cast upon them as directors in their fiduciary capacity to do this. They could not delegate the task, thereby escaping their responsibility to the state, to creditors and to nonassenting shareholders. It is not correct to say that no question as to creditors is involved in this case. The very statement rendered to the plaintiff shows the contrary. Merely a portion of the creditors—those covered by the reinsurance—have no cause for objection. Instead of performing their duty in the manner provided by law, the directors adopted an illegal method, with apparent ulterior motives. The company had sunk to a condition where the managers knew that the public policy of the state, as expressed in its statutes, commanded the arm of the law to fasten upon it. A consummated agreement with the plaintiff, the effect of which, however expressed, was to transfer to it all the substance of the body corporate, cannot be countenanced. It was incumbent on them to apply to the court for dissolution. That method, to effect the end in view was, under the circumstances, exclusive. The plaintiff was in pari delicto with them, and has no standing in this court for relief.

Demurrer sustained.