In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, Respondent, for an Order to Take Possession of the Property and Rehabilitate the NATIONAL SURETY COMPANY.

KENLON COAL COMPANY, INC., Appellant; NATIONAL SURETY CORPORATION and RECONSTRUCTION FINANCE CORPORATION (Intervenor), Respondents.*

First Department, December 8, 1933.

* Affd., 264 N. Y. ——.

*Myron J. Kleban* of counsel [*Jacob Lippman* with him on the brief; *Lippman, Kleban & Bernstein,* attorneys], for the appellant.

*Hartwell Cabell* of counsel [*Milton B. Ignatius* with him on the brief; *Cabell, Ignatius & Lown,* attorneys], for the respondent Superintendent of Insurance.

*Joseph M. Hartfield* of counsel [*Wendell P. Barker* with him on the brief; *Barker, Perrigo & Bonynge,* attorneys], for the respondent National Surety Corporation.

*Charles A. Roberts,* for the intervening respondent Reconstruction Finance Corporation.

MARTIN, J.   The board of directors of the old National Surety Company adopted a resolution consenting to the rehabilitation of the company pursuant to article XI of the Insurance Law, and on that consent the Superintendent of Insurance applied to the Supreme Court for an order of rehabilitation, to which petition was attached a summary of the plan.   An order to show cause why the rehabilitation order should not be made was granted on the petition and made returnable forthwith at Special Term. This order was served upon the old National Surety Company and the same day the order of rehabilitation was made, which latter order contained recitals that it was made pursuant to article XI of the Insurance Law.

On April 29, 1933, the Supreme Court, Special Term, New York county, granted the application of the Superintendent of Insurance of the State of New York to take possession of the property of the National Surety Company, and empowered him to adopt the summary of a certain plan of rehabilitation.   The order of May 3, 1933, ratified the plan of rehabilitation in detail.

The petitioner herein, Kenlon Coal Company, Inc., a creditor of the National Surety Company, appeals from the order entered by the Special Term on June 23, 1933, denying its application for an order modifying, amending or resettling the orders of April 29 and May 3, 1933.   The modification sought by the petitioner

was to strike from the orders appealed from the authority given the Superintendent to adopt the plan, the enjoining of the execution thereof and requiring the reconveyance of all the assets transferred pursuant thereto.

It was stated in the proposed plan that the liquid resources of the old National Surety Company were so seriously depleted by reason of payments under the guaranties of bank deposits and mortgage bonds, that the company found it necessary to borrow $11,000,000 from the Reconstruction Finance Corporation and to pledge nearly all of the company's liquid assets and that it could no longer meet its obligations. The plan provided for the organization of a new corporation known as the National Surety Corporation with a capital of $1,000,000 and a paid-in surplus of $3,000,000, to be supplied out of the assets of the old company. It provided that the new company would assume future losses on unexpired bonds and policies in selected lines of preferred risks, and that a loss reserve would be set up to perform the covenant of assumption of $8,000,000 in additional resources also to be supplied out of the assets of the old company. It provided also that matured claims due to existing creditors would not be assumed, nor would losses on mortgage guaranties, accrued or future, be assumed.

The plan also provided for the organization of a second corporation to take care of the obligations under mortgage guaranties to receive an unspecified portion of the assets of the old National Surety Company. It also provided for the organization of a third corporation, referred to as an Assets Realization Company, to receive the remaining assets of the old company termed " frozen " and which were to be gradually liquidated for the benefit of all other claimants. These include existing creditors such as the petitioner-appellant herein.

With the making of the new contract entered into between the old company and the new corporation on April 29, 1933, the plan assumed more definite form. It provided for the assumption of all losses occurring on and after May 1, 1933, on fidelity, surety, forgery, fraud, crime and merchants' protective bonds and burglary, hold-up and theft, plate glass and credit insurance policies. It expressly excluded from its assumption all guaranties on mortgage bonds whether losses have occurred or not, and all liability on guaranties of bank deposits in banks closed on May 1, 1933, or opened on a limited withdrawal plan. The contract expressly excluded all losses concerning which notice was sent prior to May 1, 1933; that is, all losses occurring prior to that date.

The petitioner-appellant contends that chapter 40 of the Laws

of 1933 is unconstitutional; that the alleged plan of rehabilitation is not a rehabilitation within the meaning of the Insurance Law, and that in any event it is injurious to creditors, bondholders and policyholders, is inequitable, and can benefit only the officers and directors of the old National Surety Company who were continued in office in the new corporation; and that close to $12,000,000 was taken from existing creditors; and contingent creditors and creditors not yet in being were preferred to the same amount. It also is urged by the appellant that some of the difficulties of the old company may be traceable to the management of those in charge who have been retained, and that the creditors have not been given any representation on the board of directors of the new company.

We are asked upon this appeal to determine the right of the State, under the provisions of article XI of the Insurance Law, with the concurrence of the Supreme Court, through the Superintendent of Insurance, to decide upon the rehabilitation, rather than liquidation, of an insurance company in distress; whether the Legislature by its enactment intended to place discretionary powers in the Superintendent of Insurance in taking over an insurance company, and with the approval of the Supreme Court, authorize the adoption of a policy of conservation of assets and a rehabilitation of the business, rather than liquidation.

In April, 1933, the National Surety Company, as did many other similar concerns, found itself with a large amount of frozen assets. It took advantage of the opportunity afforded by the Reconstruction Finance Corporation and borrowed the sum of $12,000,000, which it secured by collateral valued considerably in excess of that amount. This company, because of the depression, received unusual demands for indemnity. It had considerable frozen assets outside of those pledged to the Reconstruction Finance Corporation, but the time arrived when many persons attempted to take advantage of the situation by canceling bonds and demanding the return portions of their premiums, and there was threatened what was equivalent to a run upon a bank. Faced with this situation, the National Surety Company applied to the Superintendent of Insurance for assistance to rehabilitate its affairs, under chapter 40 of the Laws of 1933.

The Superintendent of Insurance asserts that with the assistance of an advisory board, consisting in a large part of former Superintendents of Insurance in this State, and with the consent of the Reconstruction Finance Corporation, the co-operation of which was absolutely essential, he formulated and approved a plan of rehabilitation which provided a means for continuing the business of the

National Surety Company and saving all possible assets for the creditors.

At the present time, therefore, the ultimate questions to be considered, in view of the urgency of the situation, are: (1) Shall the plan be allowed to operate subject to certain reservations in the form of protective modifications in detail? or (2) shall the operation of the plan be enjoined and the company thrown into liquidation?

Under the statutes, the Superintendent of Insurance, as rehabilitator, is vested with full authority to sell and transfer assets in his possession (Insurance Law, § 401; *Raymond* v. *Security Trust & Life Ins. Co.*, 111 App. Div. 191), and under the authority conferred upon him to conduct the business, the Superintendent has the right to use the assets of the company in rehabilitation to support the continuing operations of the National Surety Company.

The Insurance Law (Art. XI, § 401) provides as follows: " Grounds for rehabilitation of domestic insurer. The Superintendent may apply under this article for an order directing him to *rehabilitate* a domestic insurer upon any one or more of the following grounds:  *  *  *  (e) is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policy-holders, or to its creditors, or to the public;  *  *  *  or (l) has consented through a majority of its directors, stockholders or members."

Section 63 of the Insurance Law, which was abrogated by the above article, was originally enacted under a special message from Governor Hughes to the Legislature under date of March 8, 1909. In that message the Governor recommended the enactment of provisions of the Insurance Law for liquidation as well as for rehabilitation by the Superintendent of Insurance. He said: " Not only is it desirable to provide for the economical and speedy liquidation of insolvent institutions of either class, but also to make proper provision that the superintendent of the appropriate department, where the corporation is delinquent or the interests of depositors or policyholders are in jeopardy, may at once take possession of the property of the corporation and assume charge of its affiairs, so that he may be in a position to conserve its assets and take such steps as will prevent unnecessary waste or spoliation. The legislation of the last session with regard to banks provided for this and gave broad powers to the Superintendent of Banks to take possession of the property and business of banking corporations whenever there was good reason to conclude that they were in an unsafe condition, or that it was unsafe or inexpedient for them to continue in business.   It remains to provide a similarly effective remedy in the case of insurance corporations.

" Circumstances may make the exercise of such a power of the greatest importance to all parties in interest, even though the institution may be solvent, and the exercise of such authority may frequently save a corporation from ruin and make easy the resumption of business under proper safeguards. The protection which is sought to be given to our citizens by the supervisory powers of the State Department is not complete unless the Superintendent is in a position, in times of emergency, at once to take custody for the purposes of conservation, and ample authority for this purpose should be afforded."

Instead of using the word " rehabilitation," Governor Hughes referred to " conservation " to " save a corporation from ruin and make easy the resumption of business under proper safeguards." That sentence clearly sets forth the meaning and purpose of rehabilitation, and article VI (§ 402) substituted the phrase " removal of the causes and conditions which have made such proceeding necessary " for the phrase " resumption of business under proper safeguards."

The Insurance Law, section 63, in existence before the enactment of article XI, provided for both rehabilitation and liquidation, but until the last year or two the authorization for rehabilitation was seldom resorted to, because in most cases the occasion for such use did not present itself.

The language of the statute which provided for rehabilitation, without the use of that word, is as follows: " The court * * * shall * * * direct such Superintendent * * * forthwith to take possession of the property and conduct the business of such corporation, and retain such possession and conduct such business until, on the application either of the Superintendent, the Attorney-General representing him, or of such corporation, it shall, after a like hearing, appear to the court that the ground for such order directing the Superintendent to take possession has been removed and that the corporation can properly resume possession of its property and the conduct of its business."

The provision as to liquidation was couched in the following language: " If * * * the court * * * shall order the liquidation of the business of such corporation, such liquidation shall be made by and under the direction of such Superintendent."

Although the power to rehabilitate in the manner here set forth is said to be given by article XI of the Insurance Law and chapter 40 of the Laws of 1933, which is known as an emergency act, it is asserted that irrespective of the power conferred therein, the Superintendent of Insurance has for years had the right to rehabilitate under section 63 of the Insurance Law.

While it is argued on this appeal that the powers given the

Superintendent of Insurance are entirely too broad and beyond the authority of the Legislature to delegate, we are not here called upon to decide that question. The Legislature had the power to permit the Superintendent of Insurance to liquidate or rehabilitate such companies, but the extent to which that power shall be used must be supervised by the courts. The statute places a great responsibility upon both the Superintendent of Insurance and the courts, and requires the exercise of proper discretion. We cannot now determine to what extent it may be necessary to use the power given. However, any abuse of power may be checked by an application to the courts. It may be that the only authority necessary is that which the Superintendent of Insurance has had for years, the right to liquidate or rehabilitate an insurance company.

The act here under consideration provides that if any portion thereof is declared unconstitutional, that part which is constitutional may be upheld. That part which is concededly constitutional — the right to rehabilitate — may be upheld. (*Raymond* v. *Security Trust & Life Ins. Co., supra.*)

The appellant's objections appear to be to the use of the power given and not to the right of the Legislature to grant it. The manner in which it is exercised may be reviewed by the courts and any objection thereto may be presented for consideration. (*National Surety Co.* v. *Coriell*, 289 U. S. 426.)

Rehabilitation under the direction of the court may not be set aside, unless there is proof of abuse of discretion or gross inequity. Much of the recent Federal and State legislation and administrative acts, such as the Reconstruction Finance Corporation to assist banks, mortgage loan institutions and other classes of financial and commercial organizations, and the Home Loan Act, have all been designed to prevent liquidation, thereby mitigating the rigors of the depression.

The Superintendent of Insurance chose to rehabilitate the old National Surety Company by approving the organization of the new corporation and by exercising his powers as its statutory receiver in so far as its frozen assets were concerned. He acted under article XI of the Insurance Law, and chapter 40 of the Laws of 1933, which are valid enactments. It is well settled that the Legislature may enact a statute in broad outlines, leaving to the executive officials the duty of arranging the details. (*Field* v. *Clark*, 143 U. S. 649; *Buttfield* v. *Stranahan*, 192 id. 470; *Village of Saratoga Springs* v. *Saratoga G., E. L. & P. Co.*, 191 N. Y. 123.)

The Legislature recognized that the problems confronting the Insurance Department were incapable of immediate solution in each case by the Legislature itself, and for that reason it empowered

the Superintendent of Insurance to act quickly in the face of rapidly changing conditions. The rehabilitation here under review was a step toward the removal of the causes and conditions which have made such a proceeding necessary, and was accomplished under the direction of the court. Under the emergency powers granted to him, the Superintendent of Insurance had authority to conduct the business and to use assets of the company in rehabilitation to support the continuing operations of the National Surety Corporation.

While it is true that one creditor or a few creditors may not be entirely satisfied, numerous other creditors and those dealing with the National Surety Company will most likely be saved millions of dollars by the method of rehabilitation proposed by the Superintendent of Insurance. The plan suggested seems feasible and to be for the benefit of all concerned, especially the creditors.

If any of those responsible for the condition of the old company have been retained by the new company, the Superintendent of Insurance may be able to meet that situation, whether they be officers, directors or attorneys, or dummies acting for those who have been partly responsible for the condition of the old company. He may also be able to meet the objection that the creditors are not represented on the board of the new corporation. Most of these objections, however, are mere details which may readily be adjusted and do not go to the right of the State to order a rehabilitation of the company, and thus render a great public service.

The method of safeguarding the rights of the creditors of the National Surety Company may have required the formation of a new corporation so that a very valuable good will and profitable business might be saved from ruin and thus eventually materially aid the creditors of the company. To carry out such a plan it may at times be necessary to sell the assets or to transfer certain personal property. Such a course has been held proper when it best serves the interests of the creditors and is for their protection. (*Jameson* v. *Hartford Fire Ins. Co.*, 14 App. Div. 380; see, also, Insurance Law, § 421.)

In *Raymond* v. *Security Trust & Life Ins. Co.* (*supra*, at p. 195) the court said: " In that case [*Jameson Case, supra*] the rule that a hopelessly insolvent corporation must wind up its affairs in the manner prescribed by law, and the other rule that a corporation doing a profitable and paying business owes some duty to the public to continue to exercise the functions conferred upon it, are both recognized; but another rule is declared to exist, not in conflict with either of the others, and that is, that where a cor-

poration is not insolvent, but is doing a losing business and unable to continue without further loss, it has the right to sell out its business to another corporation and to cease operations, and that a contract to that effect, made in good faith and for the best interests of creditors and stockholders, is valid and binding."

We realize that rehabilitation requires a wise use of the discretion given by the statute and places great responsibility upon those intrusted with the power to permit such a course, instead of liquidation of the corporation. We are also mindful of the fact that in many cases the court must rely, to a great extent, on the Superintendent of Insurance, who has the facilities to acquire information with reference to the details. By a wise exercise of the power granted by statute the Superintendent of Insurance may remove many of the conditions which brought about the necessity for rehabilitation as well as the people responsible therefor. The salaries and other remuneration may be properly regulated and the assets of the company otherwise safeguarded.

The order denying the petition and motion of the Kenlon Coal Company, Inc., should be affirmed, with twenty dollars costs and disbursements.

FINCH, P. J., MERRELL, O'MALLEY and UNTERMYER, JJ., concur.

Order denying petition and motion of the Kenlon Coal Company, Inc., affirmed, with twenty dollars costs and disbursements. Settle order on notice.