In the Matter of the Liquidation of NATIONAL SURETY COMPANY. COMMERCIAL INVESTMENT TRUST CORPORATION, Appellant; LOUIS H. PINK, Superintendent of Insurance of the State of New York, as Liquidator of NATIONAL SURETY COMPANY, and Others, Respondents.

First Department, June 23, 1936.

*Max D. Steuer* of counsel [*Phillip W. Haberman, Sr., Harold F. Birnbaum* and *Sidney O. Friedman* with him on the brief], for the appellant.

*Edward F. Keenan* of counsel [*Samuel Boksenbom* with him on the brief], for the respondent Superintendent of Insurance.

*Ralph Wolf* of counsel [*Edwin D. Hays, Solomon I. Sklar* and *James M. Grossman* with him on the brief; *Hays, Wolf, Kaufman & Schwabacher*, attorneys], for the respondent National Bondholders Corporation.

*Basil O'Connor* of counsel [*Henry K. Urion* and *Maurice Mound* with him on the brief; *O'Connor & Farber*, attorneys], for the respondent Otis & Co.

*John S. Montgomery* of counsel [*J. Seymour Montgomery, Jr.*, with him on the brief; *Montgomery, Peabody, Grace & Derby*, attorneys], for the respondent Protective Committee for Unsecured Creditors of National Surety Company.

*Maxwell Brandwen* of counsel [*Irvine J. Shubert* and *Mortimer B. Wolf* with him on the brief; *Szold & Brandwen*, attorneys], for the respondent Independent Committee for National Surety Company Stockholders.

*Cabell, Ignatius & Lown* of counsel for respondent Bancamerica-Blair Corporation and Associates.

*Thomas E. White* of counsel, for Fidelity and Deposit Company of Maryland, a creditor.

GLENNON, J. This is an appeal by Commercial Investment Corporation from an order entered April 4, 1936, disapproving the acceptance by the Superintendent of Insurance, as liquidator of the National Surety Company, of its bid in the sum of $10,031,000 for the stock of the National Surety Corporation. The order as entered not only provided for the rejection of appellant's bid, but in addition thereto, contained an authorization, but not a direction to the Superintendent of Insurance to sell seventy per cent of the stock to the Bancamerica-Blair Corporation for $101.50 per share.

A *résumé* of the facts is necessary to present the questions involved on this appeal.

An order was entered in Supreme Court on April 29, 1933, directing the Superintendent of Insurance to take possession of and to rehabilitate the National Surety Company. The rehabilitation plan in which was proposed the creation of a new insurance company to be known as National Surety Corporation was approved. (See *Matter of National Surety Company*, 239 App. Div. 490; affd., 264 N. Y. 473.) Shortly thereafter the National Surety Corporation was organized. The stock of the new company consists of 100,000 shares of the par value of ten dollars per share, and was issued to the Superintendent of Insurance for the benefit of the creditors of the old company.

The former Superintendent of Insurance under whose administration the corporation was formed, according to the petition which is a part of the papers in this proceeding, " was strongly of the opinion that it would be to the best interests of the creditors to sell the stock of the National Surety Corporation if an adequate price could be obtained." Bids were sought from financial interests, and in the summer of 1934 a single bid of $6,000,000 for the entire capital stock was received by the former Superintendent of Insurance. He did not believe that this price was adequate and, after a hearing, recommended that the bid should be rejected. The matter was presented to the Supreme Court at that time pursuant to the provisions of section 421 of the Insurance Law which reads as follows:

" § 421. Sale or other disposition of assets and compromise of claims. The Superintendent may, *subject to the approval of the court*, (a) sell or otherwise dispose of the real and personal property, or any part thereof, of an insurer against whom a proceeding has been brought under this article and (b) sell or compound all doubtful or uncollectible debts or claims owed by or owing to such insurer including claims based upon an assessment levied against a member of a mutual insurer, provided that whenever the amount of any such debt or claim owed by or owing to such insurer does not exceed two hundred dollars, the Superintendent may compromise or compound the same upon such terms as he may deem for the best interests of said insurer without obtaining the approval of the court." (Italics mine.)

The Superintendent's recommendation was followed by the court and the bid was rejected.

In September and October, 1935, the present Superintendent of Insurance, who also was of the opinion that the stock should be sold, received further bids, the highest of which was $8,000,000. However, the offers were accompanied by terms which were not

satisfactory to the Superintendent, and as a consequence the bids were rejected. The Superintendent then sought the advice of the Insurance Board whose members were appointed pursuant to the provisions of section 450 of the Insurance Law. The Board unanimously recommended " that if the Superintendent receives an offer on the basis of $8,250,000 or more for the entire stock, such an offer should be favorably entertained."

By the present petition dated February 11, 1936, the Superintendent asked the court to issue an order to show cause pursuant to which bids of all prospective purchasers were to be accepted under the terms and conditions outlined in the petition. The Superintendent in his petition stated in part: " In view of the fact that a number of groups appear to be interested, the Superintendent, in order to secure equal opportunity for all, was of the opinion that any sale should be conducted through a Court order which would provide for the submission of bids on definite terms. In order to determine whether any of the groups with which the Superintendent has been negotiating was ready to bid on the basis of $8,250,000 or more for the entire stock in case the Superintendent applied to the Court for an order authorizing the receipt of bids, the Superintendent sent a letter dated January 14th, 1936, * * * to the representatives of all the groups who have been recently negotiating with the Superintendent for the purchase of the stock. In response to this letter the Superintendent has received assurances that a bid will probably be made on the basis of $8,250,000 or more for all of the stock if the Superintendent obtains an order providing for the receipt of bids, and for the sale of the stock on the highest bid received, subject to the approval of the Court." It is then stated that some of the creditors of the National Surety Company had urged the Superintendent to sell only part of the stock at that time, and, on the other hand, some of the prospective bidders were disinclined to bid except for all of the stock. To satisfy all the parties in interest, the Superintendent asked for bids for all of the stock or a portion thereof, but not less than seventy per cent. He stated: " The Superintendent will not favor a bid for a portion of the stock unless it is at the same price per share as the highest bid received for all of the stock. If a bid for a portion of the stock, but not less than 70% thereof, is received at as high a price per share as the highest bid received for all of the stock, then the Superintendent will recommend such bid. If a bid is received for all of the stock which is higher per share than the highest bid received for a portion of the stock, then the Superintendent will recommend the highest bid received for all of the stock. The Superintendent will not recommend any bid unless it

is on the basis of $82.50 or more per share for the present $10 par value share, or $8,250,000 or more for all of the stock, and unless it is submitted in the manner and under the terms and conditions hereinafter set forth. If one or more bids are received that comply herewith, the Superintendent will recommend the highest bid as hereinabove outlined."

The order to show cause provided that all bids were to be in writing, sealed, and accompanied by a deposit in the principal sum of ten per cent. They were to be presented to the justice who signed the order, at his chambers in the County Court House, New York county, before noon on March 9, 1936. The order to show cause which was signed February 11, 1936, further provided for the publication of a notice of sale in the New York *Times*, the *Journal of Commerce, Wall Street Journal*, the *Herald-Tribune*, the *Evening Sun* and the *New York Law Journal*, on February 14, 17 and 24 and March 2, 1936. Not only were the directions carried out in legal advertisements, but in addition thereto, there were several news items and other advertising. Furthermore, the Superintendent mailed copies of the petition and order to all those who had manifested an interest in the subject-matter.

Seven bids, accompanied by proper deposits, were received at the designated time and place as follows:

Commercial Investment Trust Corporation — 100% of stock bid for, at $100.31 per share, total bid — $10,031,000;

Bancamerica-Blair Corporation for itself and Associates — 100% of stock bid for, $97.77 per share, total bid $9,777,000;

Otis & Company — 70% of stock bid for, $97.50 per share, total bid $6,825,000;

Blue Ridge Corporation — 100% of stock bid for $97.34 per share, total bid $9,734,000; or 70% or more at a bid of $96.34 per share.

Speyer & Co. and Jackson & Curtis for themselves and Associates — 70% of stock bid for, $93.57 per share, total bid $6,549,900;

Hedden & Company — 70% of stock bid for, $93.50 per share, total bid $6,545,000;

Clark Dodge & Company and White, Weld & Company — 100% of stock bid for, $91.87½ per share, total bid $9,187,500.

The parties in interest appeared before the court on March 10, 1936, the day the order to show cause was returnable. The attorney for the Superintendent read the following recommendation: " The Superintendent in his petition dated February 11, 1936, stated that he would recommend to the Court the highest bid received for the stock. An examination of the various bids shows

that the bid made by Commercial Investment Trust Corporation is the highest bid received and in the opinion of the Superintendent is an adequate offer, and the Superintendent respectfully recommends to the Court that the Court approve his acceptance and recommendation of the bid of Commercial Investment Trust Corporation, and that an appropriate order be entered authorizing the Superintendent to consummate the sale of the stock of the National Surety Corporation to Commercial Investment Trust Corporation." The Superintendent returned the deposits to the unsuccessful bidders. He retained only, and still holds, the $1,003,100 deposit of the appellant.

Otis & Company, the third highest bidder, offered in open court to amend its bid and raise its offer for seventy per cent of the stock to $100.50 per share, which was nineteen cents above the offer of the appellant for one hundred per cent of the stock. This offer was rejected by the Superintendent. Through his counsel he stated that the bids would not be reopened and that no new offers would be accepted.

Hearings were held and testimony taken over a period of seven days. On the seventeenth of March, Bancamerica-Blair Corporation and its associates, the second highest bidder for one hundred per cent of the stock, through their counsel stated in substance that it and its associates would be willing to amend their bid by taking all or any part of the stock but not less than seventy per cent on a basis of $101.50 per share. No deposit, however, was made by counsel on behalf of their clients in conformity with the condition prescribed in the order to show cause. Counsel for the Superintendent stated to the court that he would stand by his original recommendation that the bid of the Commercial Investment Trust Corporation should be approved. In fact, on March seventeenth the Superintendent wrote to the appellant a letter which reads in part as follows: " In view of my acceptance of your bid to purchase all of the stock of the National Surety Corporation, I hereby request that, pursuant to the terms included in my petition of February 11, 1936, in the above proceedings, you deliver to me."

There is no claim made by any of the parties that the appellant in making its bid on March ninth was guilty of any fraud or irregularity. Furthermore, it is quite apparent that the Superintendent of Insurance was actuated by no motive other than to see that the best interests of the creditors and the successful bidder were safeguarded. Instead of either approving or disapproving the acceptance of the bid of the appellant, the court

entered the order now under review. We fail to find anything in section 421 of the Insurance Law which gave the court the right to make and enter this unusual order. The result of what the court has done was to substitute its judgment for that of the Superintendent. Such a procedure was not even contemplated by the Legislature in enacting this particular statute.

It is unnecessary to recite in detail the provisions of the order. The sum and substance of it was that the bid of the appellant for one hundred per cent of the stock was disapproved, not on the ground that it was inadequate, but for the reason that the court, in its judgment, believed: "That it is in the best interests of the estate of National Surety Company in liquidation and of the creditors of National Surety Company that not more than 70% of the stock of National Surety Corporation be sold at this time."

We are not unmindful of the fact that the National Surety Corporation is a going concern and has shown considerable earning power. Nevertheless, we do not believe that the discretion of the Superintendent of Insurance should be interfered with upon the theory that sometime in the future the property of the corporation may become more valuable than it was on March ninth when the bids were opened. We do not believe that the officer charged with the responsibility of liquidating the property of any of the companies over which he has jurisdiction should be compelled to hold stock for a particular period of time under the unsettled conditions which exist at the present day. The question which should have been determined was whether or not the Superintendent of Insurance was justified in recommending for approval a bid for the stock of the National Surety Corporation determined as it was in a manner calculated to obtain the best return. The public at large were accorded a full and fair opportunity to comply with the provisions of the proposal, which were made without dissent by any of the parties in interest. Public confidence requires that an officer who has charge of the sale of large properties, should be permitted to accept the honest and adequate offer of the highest bidder where, as here, all investors had a fair chance to compete.

We believe that the bid was adequate and that the recommendation of the Superintendent of Insurance should have been approved.

The order appealed from should be reversed, with costs to the appellant, and the acceptance of the appellant's bid approved.

McAvoy and Townley, JJ., concur; Martin, P. J., and O'Malley, J., dissent in part.

O'MALLEY, J. (dissenting). The invitation for bids by the Superintendent for the stock of the National Surety Corporation was subject to the approval of the court. (Insurance Law, § 421.) The court had power to inquire into the facts and circumstances even though the particular bid had been accepted or rejected by the Superintendent. (*Matter of Casualty Co. of America* [*Rubin Claim*], 244 N. Y. 443; *Matter of Globe & Rutgers Fire Ins. Co.*, 149 Misc. 16.)

While it is urged that this proceeding had all the attributes of a judicial sale and that the principles applicable thereto should control, the following facts show that there was no true sale. No sale or contract of sale was entered into by the Superintendent with any bidder, nor did he submit any sale or contract of sale for approval. The application merely sought instructions and directions with respect to a proposed sale. The manner of, and further questions as to any sale, together with terms and conditions, were reserved for the hearing.

While the Special Term found that the bid of the appellant was adequate, the following facts lead to a contrary conclusion. The evidence shows that the market value of the stock had consistently increased over a period of some two years. In 1934 a bid of $6,000,000 was offered but refused. At that time an appraiser appointed by the court valued the stock at $8,900,000 and filed his official appraisal to that effect. In 1935 three bids were received, one of which, in the sum of $8,000,000, was recommended by the Superintendent upon certain conditions, which, however, were not met. In 1936, when this proceeding was started, the Superintendent fixed an upset price of $8,250,000. As appears from the majority opinion, the bids received ranged from $91.87½ a share for the whole issue, to $100.31, the amount offered by the appellant. These increasing offers over a period of some two years are indicative of the progressive enhancement in the market or sales value of the stock. In the meantime, more than $2,500,000 of earnings have accrued to the corporation and its tangible assets increased to that amount. In 1934 the earnings were $1,100,000; in 1935, $1,500,000, and for the first two months of 1936, $500,000, which if continued for this year, would result in earnings of $3,000,000. These are net earnings after the payment of taxes, the setting up of reserves and all other necessary write-offs.

It is noteworthy that substantially every creditor of the corporation opposed the acceptance of the appellant's bid. The respondent, National Bondholders Corporation, representing approximately seventy per cent of the claims of all unpreferred creditors, or in an amount stipulated for the purposes of the hear-

ing to be between $17,000,000 and $21,000,000, out of a total of some $25,000,000, exclusive of the claim of the United States government, was among the objectants. While it is true that this respondent on a previous hearing gave approval to a sale of seventy per cent of the stock at a lesser figure, it did, at all times, oppose the sale of the entire issue. Another creditors' committee representing claims of over $1,000,000, and a representative of the Ohio receivers of the National Surety Company likewise opposed. Substantially seventy-six per cent of the creditors, therefore, appeared to oppose the acceptance of the bid and only one single creditor appears to have favored it. It also is to be noted that the committee representing stockholders objected. Moreover, the testimony of the experts called on behalf of the objectants gave an average value of some $13,000,000 to the stock. Their testimony was also to the effect that a three years' experience, or, until the end of 1936, would afford a better basis for ascertaining the real value. The record shows that the status of the liquidation proceedings is such at this time as would not result in a present distribution to creditors and that a postponement of any sale would involve no practical risk. It appears, therefore, as contended for by the creditors and the owners (stockholders), the bid of the appellant was not adequate and should be rejected under all the circumstances. I am of opinion, therefore, that the best interests of the creditors and stockholders and of the corporation itself were served by the rejection of the appellant's bid.

I, therefore, dissent from so much of the majority opinion as directs the acceptance of the appellant's bid.

MARTIN, P. J., concurs.

Order reversed, with costs to the appellant, and the acceptance of the appellant's bid approved. Settle order on notice.