THE PEOPLE OF THE STATE OF NEW YORK v. THE EMPIRE MUTUAL LIFE INSURANCE COMPANY, JOHN P. O'NEILL, Receiver, etc., Appellant.

92  105
125  503

92  105
j 162  304

One holding a policy of life insurance does not forfeit his policy by omitting to pay annual premiums thereon after the company issuing the policy has ceased to do business, transferred all of its assets and become insolvent.

The fact that a life insurance company is authorized to reinsure its risks, or that it is by statute permitted to discontinue its business and wind up its affairs, does not release it from any of its existing obligations; such a company has no power to turn its policy-holders against their consent over to another company, and the policy-holders are under no obligations, in order to protect their legal rights, to protest against an effort so to do.

The implied contract of the company with its policy-holders is, that it will continue its business, keep on hand the fund required by law for their security, and remain in a condition, so long as its contracts continue, to perform its obligations.

The E. M. L. Ins. Co. entered into a contract with the C. L. Ins. Co., by which the latter agreed to insure the outstanding risks of the former for a sum specified, it agreeing to cease business and to wind up its affairs; it transferred all of its assets to the C. L. Ins. Co., and still owed that company a balance which it had no means of paying and has not paid. The E. M. L.

Ins. Co. thereupon surrendered its offices, notified the comptroller of that fact, and seven years thereafter, at the suit of the attorney-general, it was dissolved and a receiver appointed. Certain of its policy-holders refused or neglected to accept new policies from the C. L. Ins. Co., and omitted to pay premiums after such transfer. *Held*, that the E. M. L. Ins. Co., having voluntarily disabled itself from the performance of its contract, said policy-holders were excused from further performance or offer to perform on their part, and were entitled to recover as damages for the breach on the part of the company, the value of their policies at the time of such breach; that by virtue of their position they were beneficiaries of the fund held by the State as security for policy-holders, and their claims followed that fund into the hands of the receiver and were first entitled to be paid therefrom.

(Argued March 20, 1883; decided March 30, 1883.)

APPEAL by John P. O'Neill, receiver of the defendant, from an order of the General Term of the Supreme Court, in the third judicial department, made December 19, 1882, which reversed an order of Special Term: " In so far as said order rejects and disallows the claims of certain policy-holders in said order named and sustains the exceptions to that portion of the referee's report as holds said claims to be invalid." (Reported below, 28 Hun, 358.)

The material facts are stated in the opinion.

*Geo. W. Wingate* for John P. O'Neill, receiver, appellant. The contract of reinsurance of the Empire with the Continental was not illegal. (Laws of 1853, pp. 805, 896; Laws of 1853, chap. 643, § 1; Laws of 1865, chap. 328, § 1.) Beyond the deposit with the insurance department, the company was free to deposit its assets where it saw fit. (Laws of 1853, chap. 463, § 17.) A contract of reinsurance of this description is not void, but may be enforced. (*Glen* v. *Hope Mut. L. Ins. Co.*, 56 N. Y. 379; *Fischer* v. *Hope Mut. L. Ins. Co.*, 69 id. 161, 165.) It is too late for parties who have themselves violated their contracts, by failing to pay their premiums, and thereby forfeited them, to claim now the value of those policies. (*Taylor* v. *Charter Oak*, 59 How. 468; *Meade* v. *St. Louis Mut. L. Ins. Co.*, 51 id. 5; *Universal Life* v. *White*

*head,* 10 Ins. L. J. 337, 340 ; *King's Accum. L. Fund Ann. Co.,* 3 C. B. [N. S.] 151.) Courts of equity have no power to excuse against forfeiture caused by the failure of the assured to comply with their contract to pay premiums as stated in their policy. (*Douglass* v. *Knick. L. Ins. Co.,* 83 N. Y. 499.)

*Lucius McAdam* for policy-holders, appellants. There was in fact no breach of contract by the company, the reinsurance agreement being valid and within the powers of the companies to make. (*Fischer* v. *Hope L. Ins. Co.,* 69 N. Y. 161.) The breach of contract was by the policy-holders who stopped payment, and thereby lapsed their policies. (*Carpenter* v. *Catlin,* 44 Barb. 75.) If the reinsurance agreement is alleged as an excuse for non-payment of premiums, its effect would be merely that the policy-holder need not have paid his premium actually, and may be allowed to offset the unpaid premiums against the value of the policy. (*Attorney-Gen'l* v. *Guardian L. Ins. Co.,* 82 N. Y. 336.) The valuation should be taken as of the date of the appointment of the receiver, January 14, 1879, and the unpaid premiums deducted, as was done in the former proceeding. (*People* v. *Security L. Ins. Co.,* 78 N. Y. 114; *Attorney-Gen'l* v. *North Am. L. Ins. Co.,* 82 id. 172.) The true nature of these claims is for a rescission of the contracts. (*Mead* v. *St. Louis L. Ins. Co.,* 51 How. Pr. 1.) A rescission must be made promptly, so as to properly protect the rights of all parties. It is too late to rescind ten years after the breach complained of, and after the contract of reinsurance assigned as the breach has been faithfully performed during that period, and after the company has gone into the hands of a receiver. (*Lawrence* v. *Dale,* 3 Johns. Ch. 23 ; *McNever* v. *Livingston,* 17 Johns. 437; *People* v. *W. O. B. L. Ins. Co.,* 15 Hun, 8.)

*Raphael J. Moses, Jr.,* for respondent. The cessation of business on June 7, 1872, and notice to the superintendent caused the trust in the $100,000 deposited with him to become operative. (Laws of 1853, chap. 463, § 19 ; *Mead* v. *St. Louis*

*L. Ins. Co.*, 51 How. Pr. 1 ; *Fischer* v. *Hope L. Ins. Co.*, 69 N. Y. 161.) The company, by ceasing to do business and publishing notice thereof in manner required by law, released the assured from the obligation to tender premiums. (*Attorney-Gen'l* v. *Guardian Mut. L. Ins. Co.*, 82 N. Y. 336.) The assured has not waived the breach of contract on the part of the company. (Code of Civil Pro., §§ 381, 388 ; Story's Eq. Jur., § 1520 ; *Lyon* v. *Hay*, 51 Barb. 13 ; *Kingsland* v. *Robers*, 3 Paige, 193.)

*John C. Keeler* for attorney-general.

RUGER, Ch. J. The sole question raised upon this appeal is whether a person insured forfeits his policy by omitting to pay annual premiums thereon when the company issuing such policy has ceased its business, transferred all of its assets and become insolvent.

It would seem to be an inequitable rule that would require a policy-holder to continue for years in the payment of annual premiums upon a life insurance policy to a corporation utterly unable to perform its obligation, and which, by its situation, is precluded from even possibly improving its condition in the future, or forfeit all that he has previously paid in performance of his contract.

In June, 1872, the Empire Mutual Life Insurance Company, having been in business about three years, entered into a contract with the Continental Life Insurance Company, whereby the latter agreed to reinsure the outstanding risks of the former at a specified price, which amounted in the aggregate to about $656,754, and the Empire company contracted to immediately relinquish the business of life insurance, and do whatever might be necessary to wind up its affairs. The Empire Mutual Life Insurance Company, after transferring all of its assets, including its interest in a deposit of $100,000 in the State insurance department, to the Continental Insurance Company, still owed that company, on such contract, over $200,000, which it had no means of paying and never has paid.

Upon the heels of this agreement the Empire company surrendered its offices, went out of the life insurance business, notified the comptroller of that fact, and seven years thereafter was dissolved and had a receiver of its assets appointed at the suit of the attorney-general. The Continental company continued its existence until the year 1876, when it also became insolvent and was dissolved and a receiver appointed of its effects. During the period of its existence the Continental company received such of the policy-holders of the Empire as consented to come in and accept policies from it, but the respondents, on this appeal, refused or neglected to accept new policies from the Continental, and omitted to pay their annual premiums to the officers of either the Continental or the Empire companies after June, 1872.

It will be seen that policy-holders in the Empire company, after its sale to the Continental, had the option of three alternatives, either to continue paying premiums to the nominal officers of an insolvent corporation, with the certainty of making an ultimate loss, or to accept an enforced change of policies in a company not of their own selection, and concerning whose responsibility they knew nothing, or to rest on their claim for damages against the company with whom alone they had contracted, and who had voluntarily disabled itself from performing such contract. They selected the latter alternative, omitted to pay any further premiums, and now claim damages for a breach of contract by the Empire company in June, 1872, asserting the measure of damages to be the value of their policies at the time of the breach.

If the insurer has violated its contract, and voluntarily disabled itself from performance, the insured is doubtless excused from further performance or offer to perform, on his part, and may recover such damage as he can show he has suffered.

The circumstance that an insurance company is authorized by statute to effect an insurance upon its outstanding risks, or is permitted to discontinue its business, and wind up its affairs, does not release it from any of its existing obligations. There is no principle of law which permits an insurance com-

pany any more than a private individual by its own act to avoid the performance of its contracts, and the provisions of the statute in question were intended simply to empower an insurance company to protect itself by voluntary engagements with others from eventual or continued loss, and do not at all concern the persons with whom it has previously contracted.

An insurance company has no power to turn its policy-holders against their consent over to another company, and such policy-holders are under no obligation, in order to protect their legal rights, to protest against an effort to do so.

The implied contract of an insurance company with its policy-holders is that it will continue its business, keep on hand the funds required by law for the security of its patrons, and remain in a condition, so long as its contracts continue, to perform its obligations, and when it fails to do this it has broken its engagements. (*People* v. *Security Life Ins. & Ann. Co.*, 78 N. Y. 125; 34 Am. Rep. 522.) It was held in the case·of *Shaw* v. *The Republic Life Ins. Co.* (69 N. Y. 286) that when an insurance company announces that it will not perform its contract, and does not withdraw such announcement before the period for paying premiums arrives, the assured is excused from paying or tendering payment of premiums. And in *Att'y-Gen'l* v. *Guardian Mutual Life Ins. Co.* (82 N. Y. 339) it was held that when the further payment of premiums is excused by the insolvency of the company for the purpose of enforcement, the policies are just as effectual as if the premiums had been paid. The rules relating to the rescission of contracts have no application in this case; the claim of the respondents is based upon the validity of the contract and relates to its enforcement. By virtue of their position they are beneficiaries of the funds held by the State as security for policy-holders, and their claims follow that trust fund into the hands of the receiver, and are first entitled to be paid therefrom.

The order of the General Term should be affirmed, with costs to be paid from the fund.

All concur.

Order affirmed.