## RAYMOND v. SECURITY TRUST & LIFE INS. CO. et al.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

1. INSURANCE—REGULATION—DEPOSITS—LIABILITY OF SUPERINTENDENT.

Under the law requiring the superintendent of insurance to compel life insurance companies to keep on deposit with him security of the value of $100,000, the superintendent cannot be compelled to pay to the receiver of an insurance company the difference in value between United States bonds, which he permitted to be withdrawn from deposit with him, and municipal bonds, which he permitted to be substituted therefor, so long as the latter meet the requirements of the law with respect to value.

2. SAME—INSURANCE COMPANIES—SALE OF ASSETS.

Where an insurance company is not insolvent, but is doing a losing business, and unable to continue without further loss, it may sell its business to another company and cease operations, so long as it acts in good faith, and for the best interest of creditors, stockholders and policy holders.

3. FRAUDULENT CONVEYANCES—CORPORATION—SALE OF ASSETS.

Where an insurance company in declining circumstances sells its assets to another corporation for the best interests of all concerned, its unintentional omission to provide for scattered creditors, who can and probably will be paid as fast as their claims are presented, is not sufficient to render the sale void as a matter of law.

Appeal from Special Term, New York County.

Action by Ralph Raymond against the Security Trust & Life Insurance Company and others. From the judgment rendered (89 N. Y. Supp. 753), certain defendants appeal. Reversed.

See 91 N. Y. Supp. 1041.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Edmund L. Mooney, for appellants Insurance Companies.

Julius M. Mayer, Atty. Gen., for appellant Hendricks as Superintendent of Insurance.

Bert Hanson, for respondents.

HOUGHTON, J. For several years prior to February 18, 1901, the appellant, the American Union Life Insurance Company, a domestic insurance corporation, had been carrying on the business of life insurance, and had then outstanding insurance to the amount of about $9,000,000. For some time it had been doing a losing business, but it was not insolvent either in a commercial or in an insurance sense. It had, however, been notified by the insurance department of the state, to write no new risks. On that day it entered into an agreement with the appellant the Security Trust & Life Insurance Company, a foreign corporation engaged in the same business, having a right to do business in this state, whereby the latter company, in consideration of the transfer to it of practically all of the assets of the American Union Company, amounting to upwards of $200,000 including the $100,000 required by law to be on deposit with the state superintendent of insurance, agreed to pay all policies then matured by death, and to reinsure all living policy holders of the company, and to assume agency renewal contracts, and rent of the office of the company. This agreement was entered into in pursuance of recommendation by the executive committee of the American Union Company, ratified at a special meeting of its stockholders.

The executive committee had conferred with the state insurance department with respect of reinsuring its policy holders, and it attempted to find other companies willing to reinsure them, but had not succeeded, until it made final arrangements with the appellant, the security company, with which they were advised they had the right to so contract. The arrangement appears to have been entered into in good faith to save the company from its liquidation, and to protect its matured policies and existing policy holders. The American Union Company supposed that it had paid all of its outstanding debts; but it transpired that small sums due to medical examiners, agents, and attorneys scattered throughout the country, had been overlooked. After such agreement was entered into the plaintiff obtained judgment against the American Union Company on claims of this character, and upon execution being issued and returned unsatisfied, brought an action of sequestration against the American Union Company, which resulted, on the 10th day of January, 1903, in a judgment to that effect and the appointment of respondent Ovitt as receiver. Thereupon the plaintiff instituted this action in behalf of himself and all other creditors and stockholders of the corporation who might choose to come in and

make themselves parties. The relief sought in the action was the setting aside of the agreement entered into by the two companies, the turning over the property which had been transferred to the security company to the receiver, including the $100,000 on deposit with the state superintendent of insurance, subject to the rights of existing policy holders therein. Hendricks, as State Superintendent of Insurance, was made a party, and it was asked that he account for the difference between the value of the United States bonds deposited with him and New York city bonds which he permitted to be substituted therefor; each being proper securities to deposit. The receiver made himself a party to the action, but no stockholder or creditor did so.

The plaintiff's judgment has been paid, together with his costs in the action; but the trial court permitted the action to be prosecuted in behalf of the receiver, and the trial resulted in a judgment setting aside the agreement between the two companies, and directing that all of the property transferred to the security company, including the $100,000 on deposit with the state superintendent of insurance, after the rights of policy holders therein shall have been adjusted, he turned over to the receiver, and that the State Superintendent of Insurance personally pay to such receiver the difference in value between United States bonds, which he permitted to be withdrawn from deposit with him, and the bonds of the city of New York, which he permitted to be substituted therefor. The judgment against the superintendent of insurance, personally, was wrong, and, in any event, must be reversed. All that the law requires is that he shall compel life insurance companies to keep on deposit with him securities of the value of $100,000. This he has done. No bad faith was established, and he complied with the law, and cannot be compelled to pay any difference in value there may have been between the securities deposited with him and those substituted therefor, when the latter met the requirements of law with respect to being $100,000 in value. And we think, also, that the agreement between the two insurance companies was valid and should not have been set aside.

The respondents rely, to sustain their judgment, upon People v. Ballard, 134 N. Y. 294, 32 N. E. 54, 17 L. R. A. 737, decided by the Second Division of the Court of Appeals, on a motion for the reargument of which (136 N. Y. 640, 32 N. E. 611) the First Division declined to pass upon the question whether or not it was inconsistent with the decision of the same court, made in the same month, in Skinner v. Smith, 134 N. Y. 240, 31 N. E. 911, enunciating an apparently exactly opposite doctrine (Cole v. M. I. Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Hurd v. N. Y. & C. Steam Laundry Co., 167 N. Y. 89, 60 N. E. 327; Gilbert v. Finch, 72 App. Div. 38, 76 N. Y. Supp. 143, affirmed 173 N. Y. 455, 66 N. E. 133, 61 L. R. A. 807, 93 Am. St. Rep. 623; Jacobus v. Diamond Soda Water Manufacturing Co., 94 App. Div. 366, 88 N. Y. Supp. 302), and kindred cases, holding that a hopelessly insolvent corporation cannot wind up its affairs by agreement, but must pursue the course pointed out by the statute, and that an unquestionably solvent corporation cannot bargain away its powers and life, but owes some duty to the public to continue to exercise the functions with which the state has endowed

it. An analysis of the authorities would disclose the fact that many of them turn upon whether or not the contract made was good, as against an objecting creditor or a nonassenting stockholder, or whether it was improvident and not for the best interests of all concerned in the affairs of the corporation. A lengthy review of the decision and a discussion of the distinctions, which we deem to exist amongst them, would be unprofitable, and is unnecessary in view of the fact that we are of opinion that the true distinction between a valid and an invalid contract made by one corporation for the turning over of its assets and business to another, is pointed out in Jameson v. Hartford Insurance Company, 14 App. Div. 380, 44 N. Y. Supp. 15, decided by this court. In that case the rule that a hopelessly insolvent corporation must wind up its affairs in the manner prescribed by law, and the other rule that a corporation doing a profitable and paying business owes some duty to the public to continue to exercise the functions conferred upon it, are both recognized; but another rule is declared to exist, not in conflict with either of the others, and that is, that where a corporation is not insolvent, but is doing a losing business, and unable to continue without further loss, it has the right to sell out its business to another corporation and to cease operations, and that a contract to that effect, made in good faith, and for the best interests of creditors and stockholders, is valid and binding.

This rule is founded, not only upon reason, but upon sound business sense, and the contract under consideration comes directly within it. The contract was made in good faith, and all the creditors were supposed to have been provided for. It was assumed that it was for the best interests of the existing policy holders that they should be reinsured in some proper company, and it is difficult to see why such was not the fact. Upon the winding up of the company and distribution of its assets, very little would have been realized by them. It is true that a policy holder could not be compelled to relinquish the old company from liability, and to accept reinsurance in the new (People v. Empire Mutual Life Ins. Co., 92 N. Y. 105); but the subrogated company would be liable to him, if he saw fit to enforce the contract (Fisher v. Hope Mutual Life Ins. Co., 69 N. Y. 161).

Section 22 of the insurance law (Laws 1892, p. 1940, c. 690) permits reinsurance of "the whole or any part of any policy obligation in any other insurance corporation." It is said, however, that this provision of the statute does not permit an insurance company to reinsure its policy obligations as a whole.. Whether it does or not, no policy holder has made himself a party to this action and objected, nor has any individual creditor done so. The receiver is not the representative of possible individual complaints or grievances. The unintentional omission to provide for certain scattered creditors, who can be, and undoubtedly will be, paid as fast as their claims are presented, was not sufficient to make the agreement void as matter of law. If any individual or creditor shall attack the transaction, it will be time enough then to determine whether or not the agreement was good or bad as to him.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.