[Civ. No. 45675. First Dist., Div. One. Jan. 19, 1981.]

PAUL L. MUTH et al., Plaintiffs and Appellants, v.
EDUCATORS SECURITY INSURANCE COMPANY et al.,
Defendants and Respondents.

750

752

COUNSEL

Burnett & Burnett and John M. Burnett for Plaintiffs and Appellants.

Chickering & Gregory, Kerry C. Smith, Thomas J. Mellon, Jr., and Dennis V. Swanson for Defendants and Respondents.

OPINION

ELKINGTON, J.—The instant appeal is from an "order discharging an attachment." It is taken on a clerk's and partial reporter's transcripts of the pertinent proceedings and evidence of the superior court. We relate

certain of the proceedings, and uncontroverted evidence, as found in those records.

On or about December 6, *1971*, plaintiffs Paul L. Muth and Genevieve S. Muth, his wife, deeded to defendant Educators Security Insurance Company, a Nebraska corporation, certain unimproved real property in Tehama County, California, which for reasons as will soon appear we shall refer to as parcel A. As consideration therefor, that defendant executed and delivered to plaintiffs its promissory note for $411,750, payable in installments of $50,000 on the first day of each year commencing January 1, *1982*. Interest on the unpaid balance at 7 percent was payable "semi-annually on January 1st and July 1st of each calendar year commencing with January 1, *1972*."

The promissory note also contained a provision that: "If any payment of interest or principal is not made as it comes due, the holder of this note at any time thereafter, may, at his option, elect to declare the entire balance of this note remaining unpaid, to become and be immediately due and payable."

Sometime in 1972, defendant Educators Security Insurance Company merged with defendant Pioneer Insurance Company (hereafter Pioneer), also a Nebraska corporation, which thereby took title to parcel A, and assumed all of Educators Security Insurance Company's obligations, including principal and interest of plaintiffs' promissory note. Such interest payments were made by one or the other of the defendants to and including January 1, 1975. They were, without express complaint or objection, sometimes tardily made.

On or about March 20, 1975, the Nebraska Director of Insurance found Pioneer to be in a financially "hazardous condition." Pursuant to statutes of Nebraska he took over the management and assets of that company. He then appointed a conservator of Pioneer to act under his direction. The conservator thereafter paid the interest due July 1, 1975, on the promissory note.

On or about January 16, 1976, plaintiffs received a letter, dated January 13, 1976, from Pioneer's conservator which, as relevant, advised them in this manner (the italics are ours):

"Enclosed please find the check of Pioneer Insurance Company in the amount of $14,411.25 representing the payment of interest on a certain

promissory note. *This payment should not be deemed or construed as an acknowledgment of the validity of the obligation or as a waiver of any defense to the obligation that may be available to the Pioneer Insurance Company.*

"This letter is to further document our telephone conversations advising you and your counsel, John Burnett, that the Director of Insurance for the State of Nebraska has appointed me as Conservator, under Nebraska law, of the Pioneer Insurance Company and that an agreement for the reinsurance of the life insurance policies of the company is currently being negotiated. *As a part of this reinsurance agreement, a change in the ownership of the assets currently held by the Pioneer Insurance Company will occur.* After this change of ownership occurs, you will be contacted by representatives of either the Department of Insurance or by representatives of the purchaser."

As stated in the letter, the interest check (16 days late) was enclosed.

Plaintiffs, through their attorney, rejected and returned the untimely interest check by a letter, dated January 26, 1976, to the conservator which stated, as relevant: "Due to the fact that the letter accompanying said check contained the statement, 'This payment should not be deemed or construed as an acknowledgment of the validity of the obligation or as a waiver of any defense to the obligation that may be available to the Pioneer Insurance Company;' and due to the fact that after receiving said letter and check we and our counsel have been informed by a Texas lawyer speaking from the office of the Nebraska Insurance Commissioner, who refuses to reveal the names of his clients, that your company is proposing to sell all your lands in California to some unknown company, and the further contents of said letter, we decline to accept said check and hereby give notice that we elect to demand, and do demand, immediate payment of the entire principal of said note; and we wish to further advise you that we are forthwith taking appropriate action, in the proper Courts, to enforce your obligations to us."

It will be noted that plaintiffs' election to accelerate payment of the promissory note was not based upon the January 1, 1976, interest payment's tardy tender.

On January 26, 1976, plaintiffs filed the instant action on the promissory note seeking judgment for its principal amount and accumulated

interest. The complaint recited "that they elect to declare the entire balance of this note remaining unpaid to become and be immediately due and payable," because the January 1, 1976, interest had not been timely paid "as required by the terms of said promissory note,..." The January 26, 1976, letter's stated reason for election to accelerate the note's payment was not alleged. And the complaint prayed only for the promissory note's principal sum "together with compound interest"; it did not expressly seek judgment for the accrued, and accruing, interest.

Later on the day of the action's commencement, January 26, 1976, plaintiffs caused a writ of attachment issued therein to be levied upon Pioneer's Tehama County property consisting not only of parcel A but also of a nearby parcel to which we shall hereafter refer as parcel B.

A principal issue of the trial was whether plaintiffs were legally empowered "to declare the entire balance of [the promissory] note remaining unpaid, to become and be immediately due and payable" by virtue of (1) the January 16, 1976, tardy interest payment, *or* (2) the conservator's announcement that its payment "should not be deemed or construed as an acknowledgment of the validity of the obligation or as a waiver of any defense to the obligation that may be available...."

By findings of fact and conclusions of law the trial court held against plaintiffs on those issues. ▪ We are furnished with no record of the trial's oral proceedings and testimony; we therefore presume, for the purpose of this appeal only, that such findings and conclusions were supported by substantial evidence and were otherwise in accordance with law. "Error is never presumed, but must be affirmatively shown." (*Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 326 [74 Cal.Rptr. 761] [affd. *sub nom. Neblett* v. *Carpenter* (1938) 305 U.S. 297 (83 L.Ed. 182, 59 S.Ct. 170]].)

Upon the above-noted judicial determinations it followed that plaintiffs' complaint, when filed, stated no existing cause of action. The trial court accordingly directed that: "Judgment should be entered that plaintiffs take nothing by reason of their complaint against Educators Security Insurance Company [and]...Pioneer Insurance Company."

However, *before entry of judgment* plaintiffs were permitted, over Pioneer's objection, to file a supplemental complaint praying "that in addition to the relief requested in the original Complaint, they be grant-

ed judgment for the installments [of interest] due on said note and unpaid after January 1, 1976, up to the date of trial."

Thereafter, and prior to any determination on the supplemental complaint, Pioneer moved the trial court for an order discharging the earlier attachment on parcels A and B of the Tehama County land. The motion's basis, in effect, was that—the court having found that at the times of the action's commencement and of the levy of attachment, plaintiffs had no subsisting cause of action—the attachment was thus "improperly or irregularly issued." (See Code Civ. Proc., § 556.) On the motion the court ruled that: "[T]his court has determined that plaintiffs had no claim when the order for the writ of attachment was obtained, the order granting the right to issue the writ made on January 26, 1976 should be set aside, the attachment discharged and the property levied upon should be released. Defendant's motion is therefore granted."

Plaintiffs' appeal is taken from that order.

We observe no error. The record furnished us establishes none and, as noted, we presume that had a record of the *trial's* testimony and other oral proceedings been lodged with this court, it would have supported the order discharging the attachment. The order will accordingly be affirmed.

But our inquiry is not ended.

It will be remembered that plaintiffs' action and attachment proceedings appeared to have been triggered by the conservator's letter of January 13, 1976, on behalf of the Nebraska Director of Insurance, announcing a probable "change of ownership" of Pioneer's assets without mention of an assumption of Pioneer's obligations by the new ownership entity.

During the superior court proceedings on Pioneer's motion to discharge the attachment, plaintiffs' attorney, under penalty of perjury, filed his declaration with numerous attached incorporated documents. The evidentiary allegations of the declaration were apparently *uncontroverted* in the trial court, and they are unchallenged on the appeal. No specific relief was therein sought, except that it was stated, *"To grant the Motion prayed for by Defendants, will leave these Plaintiffs without any enforceable remedy."* (Our italics.)

We find it to be in the interest of justice to treat the declaration as a request for such relief as might be appropriate.

The following matters were established by the declaration and its attached documents.

On January 22, 1976, four days before plaintiffs' action and attachment, the conservator, *"at the direction"* (italics added) of the Nebraska Director of Insurance, had entered into a "reinsurance agreement" with Life of Nebraska Insurance Company (Life), a Nebraska corporation. The agreement was subject to the approval and ratification of Life's board of directors, the fact or date of which does not appear. By the agreement Pioneer, among other things, agreed to and did transfer to Life assets, including parcels A and B of the Tehama County land, of the total value of $12,720,738.95. The only assets of Pioneer not so transferred were $50,000 (apparently the estimated cost of winding up Pioneer's affairs), and a "fourth mortgage" of unstated and questionable value. In exchange therefor, Life agreed to "assume and reinsure...all of [Pioneer's] policies and contracts of insurance," the "reserve liability" on which was estimated by Pioneer and Life at $13,808,466.

*The reinsurance agreement made no provision for the assumption or payment by Life, or anyone, of Pioneer's obligations under plaintiffs' promissory note.*

The conservator, as directed by the director of insurance, recorded with the recorder of Tehama County, January 29, 1976, Pioneer's grant deeds to Life of parcels A and B of the Tehama County land.

Later in the year, October 12, 1976, the director of insurance reported, apparently pursuant to Nebraska law, that Pioneer's total assets were $27,203.93.

By virtue of the foregoing, Pioneer, an insolvent Nebraska corporation, through Nebraska's Director of Insurance and a conservator appointed by him to manage and liquidate its corporate affairs, has attempted, unilaterally, to deny to the corporation's creditors residing in California, any means of participating in Pioneer's otherwise available corporate assets, or recourse to Pioneer's real property situated in California, for satisfaction of the corporation's indebtedness to them.

Such a practice, we opine, is contrary to the law and well-established public policy of this state.

Upon a proceeding for *"winding up"* a corporation in California the court shall determine whether "adequate provision has been made for payment or satisfaction of all debts and liabilities . . . ." (Corp. Code, § 1806.) Upon a corporate *"merger,"* "All rights of creditors. . .shall be preserved unimpaired, . . ." (*Id.*, § 1107.) And a corporate *"dissolution"* may generally be effected, only if the payment of its debts or liabilities, "whether the whereabouts of the creditor is known or unknown, has been adequately provided for . . . ." (*Id.*, § 2005.)

■ Further: "There can be no doubt that the law exacts the utmost *good faith between the debtor and his creditors* in the matter of entering into a composition agreement for the payment of debts. Such agreements rest upon the express or implied understanding that *all the creditors are to share in the assets of the debtor* . . . ." (*O'Brien* v. *Greenebaum* (1891) 92 Cal. 104, 107 [28 P. 214], italics added; and see *Kullman* v. *Greenebaum* (1891) 92 Cal. 403 [28 P. 674], *passim*; *Boas* v. *Bank of America* (1942) 51 Cal.App.2d 592, 597-598 [125 P.2d 620].) And: Every conveyance made with intent "to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." (Civ. Code, § 3439.07, and see generally §§ 3439-3440.1; Pen. Code, § 531.)

The winding up, dissolution, liquidation, or reinsurance of an insolvent insurance company is of special concern to the people of this state. (*Carpenter* v. *Pacific Mut. Life Ins. Co., supra,* 10 Cal.2d 307, 329.) By statute, when California's Insurance Commissioner becomes the conservator of an insurance company in a "hazardous condition," he becomes a "trustee for the benefit of *all creditors* . . . ." (Ins. Code, §§ 1011, 1057, italics added; *Carpenter* v. *Pacific Mut. Life Ins. Co., supra,* p. 330; and see *McConnell* v. *All-Coverage Ins. Exch.* (1964) 229 Cal. App.2d 735, 743 [40 Cal.Rptr. 587].)

This public concern for the rights of creditors of insolvent insurance companies appears to be nearly univeral ■ An "Insolvent insurance company cannot [without consent of its creditors] use its assets to reinsure policy liability . . . ." "The principle underlying the policy. . .is that upon insolvency the assets. . .*become trust funds for creditors* and that any willful diminution is a fraud upon the trust and forbidden." (*Cen-*

*tral-Penn Nat. Bank* v. *New Jersey F., Etc., Ins. Co.* (1935) 117 N.J.Eq. 548 [177 A. 441, headnote 2, 444]; italics added.) ▮ "[An insurance company] has the right to sell out its business to another corporation and to cease operations, and . . . a contract to that effect, *made in good faith, and for the best interests of creditors* and stockholders, is valid and binding." (*Raymond* v. *Security Trust & Life Ins. Co.* (1906) 111 App.Div. 191 [97 N.Y.S. 557, 560]; italics added.) (5) "The rule generally followed in distributing the general assets of an insolvent stock insurance company is that the policyholders and *general creditors* of the company are entitled to share ratably in the distribution." (43 Am.Jur.2d, Insurance, § 135, p. 192, italics added; and see *Neblett* v. *Carpenter, supra,* 305 U.S. 297, 300-305 [83 L.Ed. 182, 186-189]; *Aetna Casualty & S. Co.* v. *International Re-Ins. Corp.* (1934) 117 N.J.Eq. 190 [175 A. 114, 125]; *State* v. *American Bonding & Casualty Co.* (1931) 213 Iowa 200 [238 N.W. 726, 728-729]; *General American Life Ins. Co.* v. *Roach* (1937) 179 Okla. 240 [65 P.2d 458, 460-461]; *Van Schaick* v. *Title Guarantee & Trust Co.* (1937) 252 App.Div. 188 [297 N.Y.S. 827, 841-843]; *Taggart* v. *Keim* (3d Cir. 1939) 103 F.2d 194, 198-199.)

There are other apposite policies and principles.

▮ It is a *universal* rule "that realty is exclusively subject to the *lex loci rei sitae*—to the law of the state within which it is situated." (*Estate of Patmore* (1956) 141 Cal.App.2d 416, 419 [296 P.2d 863]; and see *Sunderland* v. *United States* (1924) 266 U.S. 226, 232-233 [69 L.Ed. 259, 260-261, 45 S.Ct. 64]; *Barber* v. *Barber* (1958) 51 Cal.2d 244, 247 [331 P.2d 628]; *Cummings* v. *Bullock* (9th Cir. 1966) 367 F.2d 182, 183; *Losson* v. *Blodgett* (1934) 1 Cal.App.2d 13, 17-18 [36 P.2d 147].) "[N]o other laws or courts can affect it by an attempt to create, transfer, or vest title thereto." (*Redwood Investment Co.* v. *Exley* (1923) 64 Cal.App. 455, 459 [221 P. 973].) ▮ It is an equally well-established principle that courts "'will never give effect to a foreign law when to do so would prejudice the state's own rights or the rights of its citizens, or when the enforcement of the foreign law would *contravene the positive policy of the law of the forum whether that policy be reflected in statutory enactment or not.*'" (*Thome* v. *Macken* (1943) 58 Cal.App.2d 76, 79 [136 P.2d 116] italics added; and see authority collected 16 Am.Jur.2d, Conflict of Laws, § 17, pp. 39-40.)

The United States Supreme Court has held: "'The rule in this country is, we think, that assignments by operation of law in bankruptcy or

insolvency proceedings, under which debts may be compulsorily discharged without full payment thereof, can have no legal operation out of the state in which such proceedings were had.'" (*Security Trust Co. v. Dodd, Mead & Co.* (1899) 173 U.S. 624, 632 [43 L.Ed. 835, 839, 19 S.Ct. 545].) ■ "[A]ssignments for the benefit of creditors should be given force in other States as to property therein situate, except so far as they come in conflict with the rights of local creditors, or with the public policy of the State in which it is sought to be enforced; and, . . . 'national comity does not require any government to give effect to such assignment [for the benefit of creditors] when it shall impair the remedies or lessen the securities of its own citizens.'" (*Disconto Gesellschaft v. Umbreit* (1908) 208 U.S. 570, 580 [52 L.Ed. 625, 629, 28 S.Ct. 337]; see also *Clark* v. *Williard* (1935) 294 U.S. 211 [79 L.Ed. 865, 55 S.Ct. 356, 98 A.L.R. 347], *passim; Clark* v. *Williard* (1934) 292 U.S. 112 [78 L.Ed. 1160, 54 S.Ct. 615], *passim.*)

■ California's high court has expressed broad agreement: "*It must be treated as the settled law of this state that as between the receiver of an insolvent foreign corporation, appointed under the laws of another state not in force here, and a domestic attaching creditor, both claiming a fund situated in this state, the fund will be decreed to the domestic creditor, without stopping to inquire into the legality of the appointment of the receiver or as to his rights under the laws of his state. Under the laws of our own state the domestic creditor had the right to attach the property, and no rule of state comity or of law requires us to set aside this right in deference to a foreign receiver claiming under the laws of another state.*" (*Lackmann* v. *Supreme Council O.C.F.* (1904) 142 Cal. 22, 25-26 [75 P. 583], italics added; this holding was expressly approved in *Clark* v. *Williard, supra,* 294 U.S. 211, and *Clark* v. *Williard, supra,* 292 U.S. 112.)

"All the rights and powers of the plaintiff in the premises, as receiver, are derived from the statute of Illinois, and are confined to the territorial jurisdiction of that state; the statute in question has no force in California. It is true that a receiver appointed under the laws of one state will sometimes be allowed, by comity, to maintain a suit involving property in another state, where there are no claims or interest of the citizens of the latter state to be considered, but not where there are conflicting claims of domestic creditors to the property or fund who are pursuing their remedies under the statutes of the other state. . . . '"But

in none of the cases is such right to sue conceded, or the suit permitted to be maintained by the foreign receiver, where the claim sought to be enforced conflicts with the rights of citizens or creditors in the state where the suit is brought."" (*Ward* v. *Pacific Mut. etc. Ins. Co.* (1901) 135 Cal. 235, 236-237 [67 P. 124]; see also *Humphreys* v. *Hopkins* (1889) 81 Cal. 551, 552-554 [22 P. 892]; *Wright* v. *Phillips* (1923) 60 Cal.App. 578, 580 [213 P. 288].)

"Our law prefers the claims of the domestic attaching creditors to those of foreign creditors or claimants, and this policy will be upheld against indirect as well as against direct attacks." (*Clark* v. *Supreme Council O. C. F.* (1905) 146 Cal. 598, 599 [80 P. 931].)

And: "The obligations of a contract are [unconstitutionally] impaired by a law which renders them invalid, or releases or extinguishes them . . . ." (*Home Bldg. & L. Assn.* v. *Blaisdell* (1934) 290 U.S. 398, 431 [78 L.Ed. 413, 425, 54 S.Ct. 231, 88 A.L.R. 1481]; and see *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 305-308 [152 Cal.Rptr. 903, 591 P.2d 1]; *Bradley* v. *Superior Court* (1957) 48 Cal.2d 509, 519 [310 P.2d 634]; *Bodle* v. *Bodle* (1978) 76 Cal.App.3d 758, 766-767 [143 Cal.Rptr. 115].)

From all of the foregoing, and at least in the absence of contrary evidence or of some transcendent theory unapparent from the record before us, it appears that Pioneer has been a party to a transaction void as to creditors, such as plaintiffs, situated in this state. But since the matter has not been litigated in the superior court, and has not been presented as an *issue* of this appeal, we make neither factual nor legal determination in reference to it.

(We note parenthetically that neither Life, nor Pioneer's conservator, nor the State of Nebraska Director of Insurance, has sought to become a party to the instant action or appeal.)

■ We observe a long-existent rule that: "When the court discovers a fact which indicates that the contract is illegal and ought not to be enforced, it will, of its own motion, instigate an inquiry in relation thereto." (*Morey* v. *Paladini* (1922) 187 Cal. 727, 734 [203 P. 760].) "Whatever the state of the pleadings, when the evidence shows that the plaintiff in substance seeks to enforce an illegal contract . . ., the court

has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids.... It is immaterial that the parties, whether by inadvertence or consent, even at the trial do not raise the issue. The court may do so of its own motion when the testimony produces evidence of illegality." (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 147-148 [308 P.2d 713].) And see authority in those cases collected.

Such an issue of illegality or abridgment of public policy may be raised for the first time on appeal. (*Fewel & Dawes, Inc.* v. *Pratt* (1941) 17 Cal.2d 85, 92 [109 P.2d 650]; *LaFortune* v. *Ebie* (1972) 26 Cal.App.3d 72, 75 [102 Cal.Rptr. 588]; *Estate of Prieto* (1966) 243 Cal.App.2d 79, 85-86 [52 Cal.Rptr. 80].)

We believe it would be in the interest of justice, and in accord with the public policy of this state, that upon our affirmance of the "order discharging an attachment," and remand to the superior court for further proceedings on the "main relief" sought by plaintiffs (see 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 424, pp. 1255-1256), i.e., judgment against Pioneer on their promissory note, that they be permitted in that, or any proper, court to pursue further and appropriate proceedings based upon the subject matter of their attorney's declaration. (See generally, 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 554-556, pp. 4495-4497.) The parties will be permitted to file related amended or supplemental pleadings, and Life, Pioneer's conservator, and the State of Nebraska's Director of Insurance may be joined, or be permitted to intervene in the action if they or any of them shall so elect. Upon such proceedings plaintiffs may seek additional relief *as may be proper*.

We have found no merit in Pioneer's contention that the "order discharging an attachment" is nonappealable. (See Code Civ. Proc., § 904.1, subd. (e).) Other of its contentions have become moot by virtue of our affirmance of the order from which the appeal was taken. And Pioneer's request for an attorney fee, as provided by the promissory note and Civil Code section 1717, will be denied pending outcome of the action on the promissory note.

The "order discharging an attachment" is affirmed. The superior court will take such additional proceedings as are not inconsistent with

the views we have expressed. The parties will temporarily stand their respective costs of the appeal, pending final superior court determination of the action.

Racanelli, P. J., and Newsom, J., concurred.