36 Cal.App.4th 363 (1995)
42 Cal. Rptr.2d 498
In re TITLE U.S.A. INSURANCE CORPORATION in Liquidation.
CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Plaintiff and Appellant,
v.
ARMATO, GAIMS, WEIL, WEST & EPSTEIN, Defendant and Respondent.
Docket No. G014366.
Court of Appeals of California, Fourth District, Division Three.
June 30, 1995.
*365 COUNSEL
Daniel E. Lungren, Attorney General, Edmond B. Mamer and Raymond B. Jue, Deputy Attorneys General, for Plaintiff and Appellant. *366 Armato, Gaims, Weil, West & Epstein, Marc C. Epstein and Bruce E. Goldberg for Defendant and Respondent.
OPINION
WALLIN, J.
The Insurance Commissioner of the State of California (the Insurance Commissioner) was appointed as the conservator and liquidator of Title U.S.A. Insurance Corporation (Title U.S.A.) in a proceeding brought under section 1010 et seq. of the Insurance Code.[1] The Insurance Commissioner filed suit against the law firm of Armato, Gaims, Weil, West & Epstein (Armato) to recover from it money it obtained pursuant to a judgment against Title U.S.A. for unpaid legal fees. The trial court concluded the Orange County Superior Court commissioner who appointed the Insurance Commissioner as liquidator of Title U.S.A. lacked authority to do so and entered judgment in favor of Armato. We reverse.
Title U.S.A. was a title insurance company, incorporated in Texas and licensed to do business in California, which became insolvent. Its principal California office was in Irvine. It was licensed to do business in several other states and liquidation proceedings were commenced in at least nine states, including California and Texas.

Armato's Collection Suit
On August 15, 1989, Armato sued Title U.S.A. in Los Angeles County Superior Court to recover unpaid legal fees. Title U.S.A. maintained a bank account in Camarillo Community Bank which Armato attached. On August 31, Camarillo Community Bank closed Title U.S.A.'s account and turned over the balance, $88,205.92, to the Ventura County Sheriff. On October 17, Armato obtained a default judgment against Title U.S.A. for $158,788.50 plus costs. The Ventura County Sheriff then transferred the $88,205.92 obtained from Camarillo Community Bank to Armato.

Texas Receivership Proceeding
On August 1, 1989, the Texas State Commissioner of Insurance (the Texas Insurance Commissioner) issued an order declaring Title U.S.A. insolvent and placing it under his supervision. On August 9, the Texas Insurance Commissioner, pursuant to an agreement with Title U.S.A., appointed a conservator to take charge of the company. On September 21, Texas filed a petition for a temporary injunction preventing Title U.S.A. *367 from disposing of any of its assets and for appointment of a receiver. On October 19 a Texas state court granted the petition and appointed Stephen Durish as liquidator for the Texas State Board of Insurance and receiver of the company.

California Liquidation Proceeding
On August 11, 1989, the Insurance Commissioner issued an order that Title U.S.A. cease and desist transacting any new business in California. On November 3, the Insurance Commissioner filed an ex parte application for an order appointing a conservator and liquidator for Title U.S.A. (Insurance Commissioner of the State of California v. Title U.S.A. (Super. Ct. Orange County, 1989, No. 607330.) A declaration of Ronald G. Rosen, deputy insurance commissioner, accompanied the application. He stated that on November 2 he telephoned the offices of the Texas State Board of Insurance, Liquidation Division, and spoke with the secretary for the director of legal services, advising her that the ex parte application was being filed. Rosen testified that on that date he also telephoned Patricia Faust, an officer of Title U.S.A. located in Irvine, and advised her of the ex parte application.
An Orange County Superior Court commissioner heard the ex parte application and issued an order appointing a conservator and a restraining order. He also issued an order to show cause re, appointment of a liquidator, set a hearing for December 7, and required the Insurance Commissioner to serve the application and orders on Title U.S.A. by serving the Texas receiver by mail. Rosen later filed a declaration stating that he personally served Faust with the papers on November 3. A proof of service filed on November 9, indicated that the application and orders were served by mail on Durish, liquidator for the Texas Board of Insurance and receiver of the company, on November 6. On November 29, Deputy Attorney General Raymond B. Jue filed his declaration in compliance with Orange County Superior Court Local Rule 504, stating that on November 28 he spoke with the attorney representing the Texas receiver of Title U.S.A. (Durish) and was advised that the receiver had no objection to the appointment of a liquidator in California.
At the hearing on December 7, 1989, there were no appearances by Title U.S.A. or Durish. The Attorney General signed a stipulation that the matter could be heard by a temporary judge pursuant to California Constitution, article VI, section 21. Orange County Superior Court Commissioner Ronald *368 Bauer, as temporary judge,[2] heard the application and granted it. The Insurance Commissioner was appointed as liquidator of Title U.S.A.

The present proceeding
In December 1989 and in early 1990, Armato rejected the Insurance Commissioner's demands that it turn over to the Insurance Commissioner the $88,205.92 it obtained in the Los Angeles collection proceeding. On December 27, 1990, the Insurance Commissioner filed this action to recover the money. The trial court ruled in favor of Armato, because it concluded Commissioner Bauer lacked authority to issue the order as there was inadequate notice of the December 7 hearing to Title U.S.A. and the Texas receiver.

I
(1a) The trial court correctly noted that the court commissioner who issued the order appointing a liquidator had authority to render the order as a temporary judge only if he had been appointed by the parties for that purpose. (Code Civ. Proc., § 259, subd. (e).) It then concluded that the unilateral appointment of the court commissioner to act as a temporary judge was ineffective because there was inadequate notice to Title U.S.A. or the Texas liquidator of the December 7 hearing.
We disagree with the trial court's conclusion that notice was inadequate. Notice of the December 7 hearing was given by service of the application for appointment of a liquidator and the order to show cause setting the hearing date. An application must be served on the named parties in the manner prescribed for personal service of summons. (§ 1038.) Alternatively, service may be as specified by the trial court if corporate officers have departed from the state. (§ 1039.) The order to show cause directed the Insurance Commissioner to serve Title U.S.A. by serving the Texas receiver by mail. The Insurance Commissioner personally served Faust, an officer of the corporation, and served Durish, the Texas receiver and liquidator, by mail.
The trial court was concerned that the Insurance Commissioner failed to show that the Title U.S.A. officer upon whom he made personal service was authorized to appear in court on the corporation's behalf. There is no such requirement for service of process. In the case of a foreign corporation, service may be made upon any officer of the corporation or its general manager in the State of California. (Corp. Code, § 2110.) More importantly, *369 the trial court was concerned with whether adequate notice was given to authorities in Texas. Apparently unaware of the proof of service in the court file for the liquidation proceeding, the trial court erroneously concluded the application had never been served on the Texas authorities. But the Texas authorities were served and had no objections to the appointment of a liquidator.[3]
Because notice of the hearing was adequate, the Insurance Commissioner's unilateral approval of the court commissioner to act as a temporary judge was valid. Code of Civil Procedure section 259 as it existed at the time the appointment was made authorized a court commissioner to act as a temporary judge when appointed for that purpose. A 1989 amendment specifically authorized such an appointment by the written consent of the appearing party in an uncontested matter or when the other party is in default. (Stats. 1989, ch. 1105, § 5.) But case law under the version in effect at the time of this hearing held that a nonappearing party loses its party litigant status and cannot challenge the unilateral appointment of a court commissioner to sit as a temporary judge. (Sarracino v. Superior Court (1974) 13 Cal.3d 1, 6 [118 Cal. Rptr. 21, 529 P.2d 53]; Reisman v. Shahverdian (1984) 153 Cal. App.3d 1074, 1092 [201 Cal. Rptr. 194].) The order appointing the Insurance Commissioner as liquidator was valid.

II
(2a) Citing the familiar rule that a judgment must be upheld if it can be affirmed on any theory of law applicable, Armato argues that this judgment must be affirmed even if we conclude the order appointing the Insurance Commissioner liquidator of Title U.S.A. is valid. It contends that because Texas is Title U.S.A.'s domicile and a receivership proceeding has been filed there, Texas law controls. Armato contends that under Texas law it is not required to give back the money. We conclude that Armato has shown no compelling reason why the Insurance Commissioner, acting as liquidator of an insurer licensed to do business in California, pursuant to an order issued by the California court, dealing with the California assets of the insurer and claims against the insurer arising in California, should be bound by Texas law in carrying out his duties.
We begin with some background as to California insurance law. The Insurance Code contains two separate statutory schemes which govern the *370 liquidation of insolvent insurers doing business in California. Sections 1010 through 1062 (the California Act) govern proceedings against insolvent insurers. In addition California has adopted the Uniform Insurers Rehabilitation Act (§§ 1064.1-1064.12 (the Uniform Act).) Texas has not adopted the Uniform Act.[4] (§ 1064.12, subd. (c).)
At issue are the California Act's provisions relating to creditors' priorities and the recovery of an insolvent insurer's property transferred to creditors before the institution of receivership or liquidation proceedings. Upon being appointed receiver or liquidator, title to all assets of the insurer vests in the Insurance Commissioner. (§ 1011.) The California Act establishes priorities for payment of creditors' claims. The claims of general creditors, such as Armato, are last in line. (§ 1033, subd. (a).)[5]
"To prevent subversion of this priority scheme and to effect an equitable and orderly distribution of assets, the [Insurance] Commissioner has the authority to avoid preferences made to certain creditors before the order of liquidation." (Cal. Insurance Law & Practice (1986) § 7.06[9], p. 7-55.) (1b), (2b) Section 1034 allows the Insurance Commissioner to void a *371 transfer of an insolvent insurer's property, the creation of a lien on an insolvent insurer's property, or the suffering of a judgment against an insolvent insurer, any of which occurred within four months of the application for an order of liquidation "if the transaction has the effect of giving to or enabling any creditor of the [insolvent insurer] to obtain a preference over any other creditor of the same class, or a greater percentage of his or her debt than any other creditor of the same class[.]" Relying on these sections, the Insurance Commissioner filed this action to recover the $88,205.92 obtained by Armato pursuant to its attachment and the judgment lien on Title U.S.A.'s bank account.
Texas has similar laws regarding the liquidation of insolvent insurers. (Tex.Ins.Code, art. 21.28.) Texas Insurance Code, article 21.28, section 5, subdivision (a), similarly makes voidable "[a]ny transfer or lien upon the property or assets" of an insolvent insurer made within four months of the commencement of delinquency proceedings if that transfer was made "with the intent of giving to any creditor or enabling him to obtain a greater percentage of his debt than of any other creditor of the same class, and which is accepted by such creditor, having reasonable cause to believe that such preference will occur[.]"
Armato argues that under Texas law, the transfer is not void because there is no evidence that the attachment or satisfaction of judgment was done with the specific intent to give it a preference over other general creditors, nor is there any evidence Armato had reasonable cause to believe it would obtain such a preference. Whether Texas law indeed requires a specific intent to gain a preference is irrelevant because California law governs this action.
Section 1064.6, subdivision (b) of the Uniform Act provides that if a reciprocal state has appointed a domiciliary receiver, the priorities established by the laws of the domiciliary state apply. But when the Uniform Act does not apply, "the California Act purports to make [its] priorities applicable to all claims no matter where the insurer is domiciled." (Cal. Insurance Law & Practice, supra, § 7.06[9], p. 7-52.) Section 1064.12, subdivision (c) specifically provides that the Uniform Act only applies to insurers domiciled in a reciprocal state and all other insurers are governed by the California Act. Section 1010 states the California Act applies to all insurers doing business in California.
"It is no longer open to question that the business of insurance is affected with a public interest. The state has an important and vital interest in the liquidation or reorganization of such a business." (Carpenter v. Pacific Mut. Life Ins. Co. (1937) 10 Cal.2d 307, 329 [74 P.2d 761]; Texas Commerce Bank *372 v. Garamendi (1994) 28 Cal. App.4th 1234, 1241 [34 Cal. Rptr.2d 155].) Furthermore, when the Insurance Commissioner is appointed as receiver or liquidator of an insolvent insurance company, he or she becomes a trustee for the benefit of all creditors. (§§ 1011, 1057; Muth v. Educators Security Ins. Co. (1981) 114 Cal. App.3d 749, 758 [170 Cal. Rptr. 849].) Thus the policy of the California Act is to ensure the orderly and equitable distribution of the assets of an insolvent insurer.
(3) The relevant legal principles to a choice of law question have been often articulated: "Questions of choice of law are determined in California by the governmental interest analysis. Under this approach, the forum in a conflicts situation must search to find the proper law to apply based upon the interests of the litigants and the involved states.... [¶] Under the governmental interest analysis [w]hen one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.... We therefore examine the laws of the involved states, and the governmental policies underlying the laws, preparatory to assessing whether either or both states have an interest in applying their policy to the case.... Only if each of the states involved has a legitimate but conflicting interest in applying its own law will we be confronted with a true conflicts case...." (Anderson v. Savin Corp. (1988) 206 Cal. App.3d 356, 361-362 [254 Cal. Rptr. 627], internal quotation marks and citations omitted, citing Offshore Rental Co. v. Continental Oil Co. (1978) 22 Cal.3d 157, 161 [148 Cal. Rptr. 867, 583 P.2d 721], criticized on another ground in I.J. Weinrot & Son, Inc. v. Jackson (1985) 40 Cal.3d 327, 337 [220 Cal. Rptr. 103, 708 P.2d 682]; Bernhard v. Harrah's Club (1976) 16 Cal.3d 313, 319 [128 Cal. Rptr. 215, 546 P.2d 719]; Hurtado v. Superior Court (1974) 11 Cal.3d 574, 580 [114 Cal. Rptr. 106, 522 P.2d 666]; Zimmerman v. Allstate Ins. Co. (1986) 179 Cal. App.3d 840 [224 Cal. Rptr. 917]; Hernandez v. Burger (1980) 102 Cal. App.3d 795, 799 [162 Cal. Rptr. 564].)
(2c) Unlike most conflict of laws cases in which one state provides a remedy, but another does not, or one state offers a significantly greater remedy for an injury than another, in this case we are confronted with similar statutory schemes designed to further the same state interest  the orderly and equitable distribution of the assets of an insolvent insurer. Indeed, in Muth v. Educators Security Ins. Co., supra, 114 Cal. App.3d 749, the court noted "public concern for the rights of creditors of insolvent insurance companies appears to be nearly [universal]." (Id. at p. 758.) Both states' insolvency schemes contain a similar ranking of creditor preferences and a provision allowing pre-receivership transfers to be voided. Research of Texas cases reveals no cases interpreting the Texas statute expressing the *373 purpose behind its voidable preference statute. Presumably, it too is the same as California's: to ensure the equitable distribution of assets among all creditors. Armato offers no further specific policy behind what it contends is a more stringent intent requirement in the Texas statute. Thus there is no conflict in the policies behind each state's law.
Furthermore, Texas has no conflicting legitimate interest in seeing its preference statute applied in California. It is interesting to note the Texas statute itself contemplates this situation, albeit in the reverse. If an insurer domiciled in California, or any other state, and doing business in Texas became insolvent, Texas would appoint an ancillary receiver to marshal and liquidate the Texas assets of that insurer for the payment of claims against that insurer. The Texas statute specifically states the Texas law, not the law of the foreign domicile, would apply to the ancillary receivership proceedings. (Tex. Ins. Code, art. 21.28, §§ 13, 15.)[6]
Cases recognize that principles of comity do not require one state to apply the law of another state when to do so would damage the rights of the former state or its citizens. In Clark v. Williard (1935) 294 U.S. 211 [79 L.Ed. 865, 55 S.Ct. 356, 98 A.L.R. 347], the United States Supreme Court upheld a Montana state court's ruling that attachment liens on Montana assets by Montana creditors of an insolvent Iowa corporation prevailed over the claims of the Iowa liquidator pursued in accordance with Iowa's liquidation statutes. "Iowa may not say ... that a liquidator with title who goes into Montana may set at naught Montana law as to the distribution of Montana assets and carry over into another state the rule of distribution prescribed by the statutes of the domicile." (Id. at p. 215 [79 L.Ed. at p. 868].)
*374 Clark expressly approved of our own Supreme Court's enunciation of the same rule in Lackmann v. Supreme Council O.C.F. (1904) 142 Cal. 22 [75 P. 583]. There the court held the California court would resolve the claims of local creditors to the California assets of an insolvent foreign corporation with a domiciliary receiver without regard to the laws of the domicile. "It must be treated as the settled law of this state that as between the receiver of an insolvent foreign corporation, appointed under the laws of another state not in force here, and a domestic attaching creditor, both claiming a fund situated in this state, the fund will be decreed to the domestic creditor, without stopping to inquire into the legality of the appointment of the receiver or as to his rights under the laws of his state. Under the laws of our own state the domestic creditor had the right to attach the property, and no rule of state comity or of law requires us to set aside this right in deference to a foreign receiver claiming under the laws of another state." (Id. at pp. 25-26. See also Muth v. Educators Security Ins. Co., supra, 114 Cal. App.3d at p. 760.)
Armato would have the California court apply Texas law to the liquidation of the California assets of a foreign corporation doing business in California, to the detriment of other creditors located in this state. The Insurance Commissioner acts as trustee for all creditors in California with respect to those assets. Applying Texas law would do nothing to further Texas policy and would damage the interests of the state of California and creditors here. The voidable preference statute of the California Act applies in this case.[7]
(4) Finally, Armato contends that the Insurance Commissioner failed to establish a voidable preference under California law. Section 1034 allows the Insurance Commissioner to void a transfer if the transaction enables the creditor "to obtain a preference over any other creditor of the same class, or a greater percentage of his or her debt than any other creditor of the same class[.]" Armato contends there was no evidence that it obtained a preference.
Armato, a general creditor, collected over half of a $158,788.50 judgment against Title U.S.A. Under section 1033, Armato is last in line for payment. *375 The Insurance Commissioner presented evidence that while he had received many general creditor claims, none had been paid. Furthermore, he did not know whether there would be any money for payment of the general creditors after satisfying other priorities.
In Jones & Son v. Independence Ind. Co. (1942) 52 Cal. App.2d 374 [126 P.2d 463], the court held an unsecured general creditor could not execute an attachment lien on an insolvent insurer's bank account. "If [the creditor] were permitted to levy on and obtain the dividends held by the bank receiver, the other creditors would be deprived of any share in those dividends, and [the creditor] would obtain a preference or a greater percentage than other creditors." (Id. at p. 379.) So too here, by levying on the $88,205.92 in Title U.S.A.'s bank account, Armato has deprived all other creditors of the right to share ratably in that money. It has obtained a preference which is voidable under section 1034.
The judgment is reversed.
Sonenshine, Acting P.J., and Rylaarsdam, J., concurred.
A petition for a rehearing was denied July 27, 1995.
NOTES
[1] All statutory references are to the Insurance Code unless otherwise indicated.
[2] Since December 1990, Ronald Bauer has been a judge of the Orange County Superior Court.
[3] Even were we to agree that notice to the Texas authorities was inadequate, we question the right of Armato, which was not a party to the liquidation proceeding, to challenge the appointment of a liquidator. However, since the Insurance Commissioner did not raise the issue, we decline to consider it.
[4] Where appropriate we will explain how the Uniform Act resolves certain issues. Additionally, we will use some of the definitions in the Uniform Act. (§ 1064.1.) For example, the "domiciliary state" is Texas, the state of incorporation. California is an "ancillary state." A "reciprocal state" is one which has adopted the Uniform Act. However, a "reciprocal state" is also one in which the insurance commissioner of that state has entered into an agreement with the Insurance Commissioner which provides: "(1) a commissioner or equivalent supervisory official is required to be the receiver of a delinquent insurer; (2) title to assets of the delinquent insurer shall vest in the domiciliary receiver, as of the date of any court order appointing him or her as receiver, and he or she shall have the same rights to recover those assets as provided under subdivision (b) of Section 1064.3; (3) nondomiciliary creditors may file and prove their claims before ancillary receivers; (4) the laws of the domiciliary state of the delinquent insurer shall be applied uniformly to residents and nonresidents in the allowance of preference of claims, except for claims to special deposits created under the laws of the domiciliary state; (5) preferences (including attachments, garnishments, and liens) for creditors with advance information shall be prevented; and (6) the domiciliary receiver may sue in the reciprocal state to recover any assets of a delinquent insurer to which he or she may be entitled under the law." The record indicates that the Insurance Commissioner was negotiating an agreement with the Texas Insurance Commissioner regarding the liquidation of Title U.S.A., but there is no indication as to whether it was executed and whether it fits the above criteria. Therefore, we assume there is no agreement making Texas a reciprocal state.
[5] That section provides: "(a) Claims allowed in a proceeding under this article shall be given preference in the following order: [¶] (1) Expense of administration. [¶] (2) Unpaid charges due under the provisions of Section 736. [¶] (3) Taxes due to the State of California. [¶] (4) Claims having preference by the laws of the United States and by laws of this state. [¶] (5) All claims of the California Insurance Guarantee Association or the California Life and Health Insurance Guaranty Association, and associations or entities performing a similar function in other states, together with claims for refund of unearned premiums and all claims of policyholders of an insolvent insurer that are not covered claims.... [¶] (6) All other claims."
[6] Texas Insurance Code article 21.28, section 13 provides in full: "A court of competent jurisdiction in this State shall, on the petition of the State Board of Insurance, appoint the liquidator herein provided as ancillary receiver in this State of an insurer domiciliary in another state or jurisdiction when under the laws of this State a receiver should be appointed. The Board shall file such petition on its own initiative or if ten (10) or more persons resident in this State, having claims against such insurer, file a petition or petitions in writing with the Board, requesting the appointment of such ancillary receiver. Such ancillary receiver shall have the right to sue for and reduce to possession the assets of such insurer in this State, and shall have the same powers and be subject to the same duties with respect to such assets, as are possessed by a receiver of a domiciliary insurer under the laws of this State. On commencement of the delinquency proceedings in this State, the ancillary receiver in this State immediately is entitled to possession and control of any special or statutory deposits of the delinquent insurer located within this State. The ancillary receiver may use those special or statutory deposits first towards the payment of expenses of the administration of the receivership proceedings then towards the payment of approved claims against the deposits. The remaining provisions of this Article shall be applicable to the conduct of such ancillary proceedings." (Italics added.)

Section 15 provides: "In the event of conflict between the provisions of this Article and the provisions of any existing law, the provisions of this Article shall prevail, and all laws, or parts of law, in conflict with the provisions of this Article, are hereby repealed to the extent of such conflict."
[7] We also reject Armato's argument that applying the California Act deprives it of equal protection. The argument is that if each state applies its own preference statutes as to assets located in that state, creditors are treated differently depending upon the state's law. Only by applying Texas law will all creditors nationwide be treated similarly. Of course, even were we to apply Texas law, we cannot guarantee other states would do the same. Our ruling could not give Armato the uniformity guarantee it seeks. Furthermore, equal protection does not require uniformity of laws in all states. Rather it requires the fair and equal application of this state's laws to persons in this state. (Brown v. Merlo (1973) 8 Cal.3d 855, 861-862 [106 Cal. Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]; In re Strick (1983) 148 Cal. App.3d 906, 913-914 [196 Cal. Rptr. 293].) Clark v. Williard, supra, 294 U.S. 211 specifically noted there would not be a uniform policy among the states when liquidators and creditors compete. (Id. at p. 214 [79 L.Ed. at pp. 868-869].)